770 So.2d 339 (2000)
STATE of Louisiana
v.
Roy LINDSEY.
State of Louisiana
v.
Darryl K. Webster.
Nos. 99-K-3256, 99-K-3302.
Supreme Court of Louisiana.
October 17, 2000.
*340 Sherry Watters, Abita Springs, Counsel for Applicant (No. 99-K-3256).
Richard P. Ieyoub, Attorney General, Harry F. Connick, District Attorney, Nicole Brasseaux Barron, New Orleans, Counsel for Respondent (No. 99-K-3256).
Richard P. Ieyoub, Attorney General, Harry F. Connick, District Attorney, Jeffrey Wayne Davidson, Belle Chasse, Holli Ann Herrle-Castillo, Abita Springs, Counsel for Applicant (No. 99-K-3302).
*341 Christopher Albert Aberle, Abita Springs, Counsel for Respondent (No. 99-K-3302).
VICTORY, J.
At issue in these consolidated cases is whether or not the mandatory penalty of life imprisonment for each of the defendants dictated by the Habitual Offender Statute, La. R.S. 15:529.1, constitutes an excessive sentence under State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672. After reviewing the record and the applicable law, we hold that in State v. Lindsey, the mandatory life sentence imposed by the trial court was not excessive under Johnson. However, because the court of appeal in State v. Webster did not analyze the facts of that case under Johnson, but instead relied on prior jurisprudence from this Court, we remand State v. Webster to the court of appeal for reconsideration.

FACTS AND PROCEDURAL HISTORY
Defendant Roy Lindsey was employed as a waiter at the Court of Two Sisters restaurant in New Orleans at the time of his arrest. Marsha Miles, a cashier at the restaurant, worked in the adjoining bar. On March 29, 1996 at approximately 5:40 p.m., the defendant came into the bar after the designated eating time for employees. After Ms. Miles scolded Lindsey for being in the bar after hours, he bought a bag of potato chips. While Ms. Miles was ringing up his request for another bag of chips, he reached over the bar and took a handful of twenty dollar bills ($400.00) from the cash register. When Ms. Miles attempted to close the drawer, Lindsey grabbed her wrist and tried to pull her over the counter. When she asked what he was doing, he replied "Just tell Richard Drego [the night manager]." He then ran out of the restaurant and into the street with the money but was subsequently arrested.
On October 30, 1997, a six-person jury found Lindsey guilty of simple robbery. Following his adjudication as a fourth felony offender, the trial court sentenced him to life imprisonment at hard labor without benefit of probation or suspension of sentence. Lindsey appealed and the Fourth Circuit affirmed his conviction and sentence. State v. Lindsey, 98-1212 (La.App. 4 Cir. 11/3/99), 752 So.2d 994.
Defendant Darryl K. Webster snatched a purse from the shoulder of a tourist from Maryland who was visiting the French Quarter. One of the victim's companions chased and caught Webster and he was arrested. The victim retrieved her purse which had fallen to the ground.
On October 23, 1997, a jury found Webster guilty of purse snatching. Webster pled guilty to a multiple bill as a triple felony offender and was sentenced to life imprisonment without benefit of probation or suspension of sentence. The Fourth Circuit reversed his sentence as excessive and remanded the case to the trial court for resentencing. State v. Webster, 98-0807 (La.App. 4 Cir. 11/10/99), 746 So.2d 799.
We granted and consolidated these writ applications to determine whether either of these sentences is excessive under this Court's jurisprudence. State v. Lindsey, 99-3256 (La.5/12/2000), 761 So.2d 555; State v. Webster, 99-3302 (La.5/12/2000), 761 So.2d 555.

DISCUSSION
At issue in these cases is the same issue we addressed in State v. Johnson, supra, that is, under what rare circumstances is a sentence lower than the minimum sentence mandated by the Habitual Offender Law required to be imposed because imposition of the mandatory sentence would be excessive under the Louisiana Constitution.
The Habitual Offender Law, La. R.S. 15:529.1, provides in part as follows:
(A)(1) Any person who, after having been convicted within this state of a felony ... thereafter commits any subsequent felony within this state, upon *342 conviction of said felony, shall be punished as follows:
. . .
(b) If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then:
. . .
(ii) If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13)[1] or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
(c) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then:
. . .
(ii) If the fourth or subsequent felony or any of the prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or of any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
The Legislature enacted the Habitual Offender Law pursuant to its sole authority under Article 3, § I of the Louisiana Constitution to define conduct as criminal and to provide penalties for such conduct. State v. Johnson, supra at 675; State v. Dorthey, 623 So.2d 1276, 1280 (La.1993); State v. Taylor, 479 So.2d 339, 341 (La.1985). This Court has repeatedly held that the statute is constitutional and therefore, the minimum sentences the statute imposes upon multiple offenders are presumed to be constitutional, and should be accorded great deference by the judiciary. State v. Johnson, supra; State v. Dorthey, supra. However, courts have the power to declare a sentence excessive under Article I, Section 20 of the Louisiana Constitution even though it falls within the statutory limits provided by the Legislature. State v. Johnson, supra at 676; State v. Sepulvado, 367 So.2d 762, 767 (La.1979).
In State v. Dorthey, we held that this power extends to the minimum sentences mandated by the Habitual Offender Law and that the trial court must reduce a defendant's sentence to one not constitutionally excessive if the trial court finds that the sentence mandated by the Habitual Offender Law "makes no measurable contribution to acceptable goals of punishment" or is nothing more than "the purposeful *343 imposition of pain and suffering" and "is grossly out of proportion to the severity of the crime." State v. Dorthey, supra at 1280-1281.
Thereafter, in a series of writ grants, we acted to curtail the district court's use of Dorthey in cases in which it appeared that the courts were simply substituting their judgment of what constituted an appropriate penalty for that of the Legislature. See, e.g., State v. Handy, 96-2505 (La.1/5/97), 686 So.2d 36; State v. Bastian, 96-2453 (La.12/13/96), 683 So.2d 1220; State v. Randleston, 96-1646 (La.10/4/96), 681 So.2d 936; State v. Wilson, 96-1600 (La.10/4/96), 680 So.2d 1169; State v. Johnson, 96-1263 (La.6/28/96), 676 So.2d 552; State v. Gordon, 96-0427 (La.5/10/96), 672 So.2d 669; State v. Kelly, 95-2335 (La.2/2/96), 666 So.2d 1082; State v. Lombard, 95-2107 (La.11/27/95), 662 So.2d 1039.
This effort culminated in Johnson, where we set out guidelines for when and under what circumstances courts should exercise their discretion under Dorthey to declare excessive a minimum sentence mandated by the Habitual Offender Law. We held that "[a] court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut [the] presumption of constitutionality" and emphasized that "departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations." State v. Johnson, supra at 676, 677. To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:
[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
Id. (Citing State v. Young, 94-1636 (La. App. 4 Cir. 10/26/95), 663 So.2d 525, 529 (Plotkin, J., concurring)).
In making this determination, we held that "while a defendant's record of non-violent offenses may play a role in a sentencing judge's determination that a minimum sentence is too long, it cannot be the only reason, or even the major reason, for declaring such a sentence excessive." Id. This is because the defendant's history of violent or non-violent offenses has already been taken into account under the Habitual Offender Law for third and fourth offenders, which punishes third and fourth offenders with a history of violent offenses more severely than those with a history of non-violent offenses. Id.
In addition, we held that the trial judge must keep in mind the goals of the statute, which are to deter and punish recidivism, and, we instructed that the sentencing court's role is not to question the wisdom of the Legislature in requiring enhanced punishments for multiple offenders, but rather to determine whether the particular defendant before it has proven that the minimum sentence is so excessive in his case that it violates Louisiana's constitution. Id. at 677.
Finally, we held that if a trial judge finds clear and convincing evidence which justifies a downward departure, he is not free to sentence the defendant to whatever sentence he feels is appropriate under the circumstances, but must instead sentence the defendant to the longest sentence which is not constitutionally excessive. Id.
In light of the above, we now must determine whether the life sentences imposed by the trial court in each of the consolidated cases were excessive.

Defendant Lindsey
Defendant Lindsey argues that his life sentence is unconstitutionally excessive because his prior convictions, i.e. attempted simple burglary, attempted burglary, and simple burglary, did not involve *344 crimes of violence. However, as the Fourth Circuit recognized, his fourth conviction, for simple robbery, did involve a crime of violence under La. R.S. 14:2(13) and thus was a sufficient basis for the imposition of a life sentence under La. R.S. 15:529.1. Defendant Lindsey argues that while simple robbery under other circumstances would not be out of proportion with a life sentence, as applied to him, it is excessive because he engaged in the simple robbery as an impulse, in a moment of anger, over an employment problem. Further, he argues that over five years had elapsed since his last conviction, no weapon was involved, and the victim received only minor injuries.
Defendant Lindsey argues that these factors are important based on the United States Supreme Court's holding in Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). In Solem, the Court considered a mandatory life term under South Dakota's recidivist law, imposed upon defendant after he was found guilty of uttering a "no account" check for $100, his seventh felony conviction. The Court agreed with a lower federal court that the sentence was grossly disproportionate under the Eighth Amendment. Id., 463 U.S. at 283-284, 103 S.Ct. at 3006. The Court announced "as a matter of principle," that a "criminal sentence must be proportionate to the crime for which the defendant has been convicted." Id., 463 U.S. at 290-291, 103 S.Ct. at 3009-3010. While agreeing that "a State is justified in punishing a recidivist more severely than it punishes a first offender," nevertheless, the Court explained that the defendant's "status [] cannot be considered in the abstract," noting that his prior convictions all were nonviolent, relatively minor and that they didn't involve crimes against the person. Id., 463 U.S. at 296-297, 103 S.Ct. at 3013.[2]
However, Lindsey's prior criminal history does not put him on par with the offender in Solem, because his instant conviction for simple robbery was a crime of violence and because the victim suffered injuries to her person. Further, as the appellate opinion indicates, the trial court apparently found that Lindsey's self-serving characterization of the events as an impulsive action of a disgruntled employee fail to distinguish him as that rare and atypical case for whom the Legislature's enactment of R.S. 15:529.1(A)(1)(b)(ii) should not apply.
We agree with the lower courts that Lindsey's sentence was not excessive. He has not carried his burden under Johnson. In fact, he is exactly the type of offender that the Habitual Offender Statute intends to punish so severely. He is sentenced to life imprisonment because he continues to commit felony after felony. The fact that his last felony was the only violent crime against a person is not an "unusual circumstance" that would support a downward departure. A person with three prior non-violent felony convictions who then proceeds to commit a felony involving violence against a person has shown that his criminal conduct is becoming worse. The goals of the Habitual Offender Statute, to deter and punish recidivism, are satisfied by imposing a life sentence against such a person. Therefore, for all the above reasons, we affirm his conviction and sentence.[3]

*345 Defendant Webster

Defendant Webster had two prior convictions for simple burglary and his latest conviction was for purse snatching, defined as a "crime of violence" under La. R.S. 14:2(13). As such the trial court found him to be a third felony offender and sentenced him under La. R.S. 15:529.1(A) 1(b)(ii) to life imprisonment without benefit of probation or suspension of sentence. In imposing this sentence, the trial court stated:
The [c]ourt further finds that the Dorthey rule, D-O-R-T-H-E-Y, would not be triggered in this case as the [c]ourt is not aware of any circumstances that would cause the [c]ourt to deviate from the mandatory sentence.
The appellate majority disagreed with the trial court's determination under Dorthey, concluding:
The life sentence imposed in the instant case is clearly excessive. Although purse snatching, La.Rev.Stat. 14:55.1, is regarded as a violent felony, thus triggering the "three strikes" provision of La.Rev.Stat. 15:529.1(A)(1)(b)(ii), it appears the least heinous of those enumerated in La.Rev.Stat. 14:2(13), which defines "violent felony" for the purpose of the multiple offender statute. Furthermore, the defendant committed the underlying crime in the least reprehensible manner. He was unarmed, the criminal act was limited to reaching out to snatch the purse, the victim was not harmed, and her property was recovered immediately following the offense. Finally, the defendant's prior convictions for simple burglary were nearly ten years old when he committed the instant offense.
In view of the circumstances, we find the life sentence imposed by the trial court to be grossly out of proportion to the severity of the crime.
746 So.2d at 801-02.
However, the court of appeal failed to analyze this case under the test we enunciated in Johnson, and, in fact, did not even mention Johnson. Because Johnson contains the governing law for determining whether or not the mandatory penalty of life imprisonment dictated by the Habitual Offender Statute is excessive, we remand this case to the court of appeal for reconsideration in light of Johnson.

CONCLUSION
A sentencing court should exercise its authority to declare excessive a minimum sentence mandated by the Habitual Offender Statute only under rare circumstances, as set forth in State v. Johnson. Defendant Lindsey's arguments, that this particular crime of violence against a person was really just an impulsive, employment-related dispute, that no weapon was involved, and that the victim suffered only minor injuries, were not accepted by the trial court as sufficient reasons for a downward departure from the mandatory minimum *346 sentence and we agree. The fact that he has only committed one "crime of violence," his latest crime, does not justify a downward departure. In sum, Lindsey failed to carry his burden under Johnson. Finally, because the court of appeal in State v. Webster failed to analyze the case under the law as set forth in Johnson, that case must be remanded for reconsideration.

DECREE
For the reasons stated above, the judgment of the court of appeal in State v. Lindsey is affirmed. State v. Webster is remanded to the court of appeal for reconsideration in light of this opinion.
STATE v. LINDSEY, NO. 99-K-3256 AFFIRMED.
STATE v. WEBSTER, NO. 99-K-3302 REMANDED.
KNOLL, J., concurs in part and dissents in part and assigns reasons.
JOHNSON, J., dissents and assigns reasons.
KNOLL, concurring, in part, and dissenting, in part.
I agree with the majority's disposition of State v. Webster. However, with regard to State v. Lindsey, although I agree that Lindsey's criminal conduct requires a significant period of incarceration, I find that the majority's affirmation of this life sentence without benefit of probation or suspension of sentence for this defendant is so disproportionate to the severity of the crime that it renders the sentence constitutionally excessive.
Coker v. Georgia, 433 U.S. 584, 592, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977) declared that the Eighth Amendment to the United States Constitution[1] bars punishment that does not make a "measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering," or is disproportionate "to the severity of the crime." In line with that jurisprudence, the Supreme Court in Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), invalidated a sentence of incarceration because it was too severe in relation to the crime committed. There, the Court stated:
[W]e hold as a matter of principle that a criminal sentence must be proportionate to the crime for which the defendant has been convicted. Reviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals. But no penalty is per se constitutional. As the court noted in Robinson v. California, 370 U.S. [660] at 667[, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962)], a single day in prison may be unconstitutional in some circumstances.
Id. at 290, 103 S.Ct. 3001.
It has long been the holding of this Court that we have the power to declare a sentence excessive under Article I, § 20 of the Louisiana Constitution even though it falls within the legislatively provided statutory limits. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). A life sentence forever closes the door of hope that this defendant might one day learn from his past mistakes and ready himself to become a productive participant in our society. See State v. Stevenson, 99-2824 (La.App. 4 Cir. 3/15/00), 757 So.2d 872; State v. Burns, 97-1553 (La.App. 4 Cir. 11/10/98), 723 So.2d 1013, writ denied, 98-3054 (La.4/1/99), 741 So.2d 1282.
In the present case, I find that the life sentence on Lindsey is grossly disproportionate *347 to the offense and the offender. Lindsey was thirty-one years of age at the time of sentencing. For a period of almost six years, defendant remained crime-free. Before the commission of this crime of simple robbery on March 29, 1996, Lindsey had three convictions for attempted simple burglary, one in 1990, and two others in February and June 1988, respectively. Even though defendant's most recent conviction, simple robbery, fit the definition of a "crime of violence" as provided in LA. RE v. STAT. 14:2(13), his three prior convictions did not involve crimes of violence; nonetheless, it is clear that none of defendant's crimes involved the use of a weapon. If a defendant receives a life sentence, hope for rehabilitation is removed, and "the taxpayers of the state [will have to] feed, house, and clothe [him] for life." State v. Hayes, 97-1526 (La.App. 1 Cir. 6/25/99), 739 So.2d 301, 303.
Moreover, I find that disproportionality often results because of the lower courts' application of the rather fluid, subjective elements identified in State v. Dorthey, 623 So.2d 1276 (La.1993) and State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672. Compare, for example, the diametrically opposed results between the trial court and appellate court dispositions in State v. Stevenson, 757 So.2d at 874, State v. Randall, 98-1763 (La.App. 3 Cir. 6/9/99), 741 So.2d 852, writ granted, 99-2476 (La.2/11/00), 754 So.2d 245, and State v. Burns, 723 So.2d at 1013.
Based upon the record in this Court, I would vacate Lindsey's sentence and remand this case to the district court to sentence defendant to the longest sentence that is not constitutionally excessive, i.e., to the maximum constitutional sentence. Such action would address the dire need to come to grips with defendant's recidivism and yet follow the dictates of the Constitution.
JOHNSON, J., Dissenting.
Defendant Darryl K. Webster was convicted of purse snatching, a violation of La. R.S. 14:65.1, and sentenced to life imprisonment without benefit of probation or suspension of sentence after the trial court adjudicated him a third felony offender.
The Court of Appeal vacated the life sentence finding it to be constitutionally excessive. I agree with the Court of Appeal.
A life sentence for purse snatching is grossly disproportionate under the Eighth Amendment.
A criminal sentence must have some relationship to the crime for which the defendant has been convicted. Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).
Where is the social value in incarcerating this defendant for life for what most reasonable people will agree is a relatively minor offense?
When the legislature passed the habitual offender statute, La. R.S. 15:529.1, the intent was to reach violent criminals, who demonstrate through their recidivism that they are beyond rehabilitation.
I am not convinced that the legislature had defendant Darryl K. Webster, or other purse snatchers in mind when they put these mandatory sentences in place. We now see disparate results across the state. Some District Attorneys reserve multiple billing for violent offenders.
In Orleans Parish, every petty thief, shoplifter and purse snatcher is subject to a mandatory life sentence because of the policy on multiple billing.
With regard to defendant Roy Lindsey, my appreciation of the record is that this crime arose from an employment-related dispute with a co-worker. No weapon was involved and the victim was not injured. Lindsey's prior convictions did not involve crimes of violence.
*348 In my opinion, the life sentence imposed by the trial court is grossly out of proportion to the severity of the crime. I would set aside the sentence and remand the case for reconsideration.
NOTES
[1] La. R.S. 14:2(13) defines a "crime of violence" as follows:

"Crime of violence" means an offense that has, as an element, the use, attempted use, or threatened use of physical force against the person or property of another, and that, by its very nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense or an offense that involves the possession or use of a dangerous weapon. The following enumerated offenses and attempts to commit any of them are included as "crimes of violence": (a) Solicitation for murder; (b) First degree murder; (c) Second degree murder; (d) Manslaughter; (e) Aggravated battery; (f) Second degree battery; (g) Aggravated assault; (h) Mingling harmful substances; (i) Aggravated rape; (j) Forcible rape; (k) Simple rape; (l) Sexual battery; (m) Aggravated sexual battery; (n) Oral sexual battery; (o) Aggravated oral sexual battery; (p) Intentional exposure to AIDS virus; (q)Aggravated kidnapping; (r) Second degree kidnapping; (s) Simple kidnapping; (t) Aggravated arson; (u) Aggravated criminal damage to property; (v) Aggravated burglary; (w) Armed robbery; (y) Simple robbery; (z) Purse snatching; (aa) Extortion; (bb) Assault by drive-by shooting; (cc) Aggravated crime against nature; (dd) Carjacking; (ee) Illegal use of weapons or dangerous instrumentalities.
[2] We note that the holding of Solem has been called into question by the Supreme Court's later opinion in Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), which held that the fact that the sentencing judge was statutorily required to impose a life sentence without possibility of parole and could not take into account the particularized circumstances of the crime and the criminal, including such mitigating factors as the accused's lack of any prior felony convictions, did not make the sentence "cruel and unusual" under the Eighth Amendment.
[3] Defendant Lindsey also assigns as error that the state presented insufficient evidence to carry its burden of proving identity at the habitual offender hearing. However, this Court has repeatedly held that La. R.S. 15:529.1(F) does not require the state to use a specific type of evidence to carry its burden at an habitual offender hearing and that prior convictions may be proved by any competent evidence. See State v. Blackwell, 377 So.2d 110, 112 (La.1979); State v. Curtis, 338 So.2d 662 (La.1976). In this case, after identifying the certified copies of the arrest registers for the prior offenses, the state's expert, Officer James, testified that the fingerprints on the arrest registers matched the defendant's prints taken in court before the multiple offender hearing. Thereafter, Officer James identified the bill of information packets for the defendant which contained docket masters, bills of information, plea forms and minute entries. According to the officer, the defendant's birth date, social security number, and Bureau of Identification number contained in the documentation for the defendant's prior convictions appeared identical to the documentation for the instant conviction. Although the state was unable to match his fingerprints to prints on the bill of information, it was able to match his prints to prints on the arrest register which was then compared to the bill of information and matched through the name, arrest date, and item number. Thus, the state sufficiently proved that the defendant was the person who committed the previous offenses. See State v. Chaney, 423 So.2d 1092 (La.1983); State v. Westbrook, 392 So.2d 1043 (La.1980); State v. Lee, 97-1035 (La.App. 5 Cir. 2/11/98), 709 So.2d 226; State v. Hawthorne, 580 So.2d 1131 (La.App. 4 Cir.1991).
[1] As recognized in Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), the Eighth Amendment is applicable to criminal punishment meted out in state courts.