1STEVEN R. PLOTKIN, Judge.

INTRODUCTION

The issues in this appeal are was the motion to suppress properly denied and was a life sentence excessive.

PROCEDURAL HISTORY

The State filed a bill of information charging the defendant-appellant Gregory Finney with one count of violating La. R .S. 40:967 relative to simple possession of cocaine and one count of violating La. R.S. 14:34.2 relative to battery on a police officer wherein the officer was injured and required medical treatment. The defendant was arraigned and entered not guilty pleas. A motion to suppress was denied. The six person jury found the defendant guilty as charged on the possession of cocaine count and guilty of simple battery of a police officer on the second count. The State filed a multiple bill charging the defendant as a fourth offender to which the defendant entered a plea of not guilty. The court found the defendant to be a fourth offender and sentenced him, on count one, to serve life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence. On count two the defendant was sentenced to six months in parish prison to run concurrently with any other sentence.

STATEMENT OF THE FACTS

On October 18, 1999 Sergeant Brian Lampard and Officer Earl Razor of the New Orleans Police Department, Fifth District, were on proactive patrol in the 2200 block of Touro Street. As the officers were traveling riverbound on the one-way | ¡.street, they observed a truck parked facing the wrong way; the defendant was standing outside of the truck. The officers observed the driver of the truck hand the defendant a white spherical object about the size of a tennis ball. As the defendant stepped away from the truck, he saw the approaching police officers in their marked unit, appeared startled, placed the object behind his back, and began to walk away. Because of their familiarity with the area and past experience, the officers believed they had interrupted a narcotics transaction. The officers decided to stop and conduct an investigation. Officer Razor exited the police car first and ordered the defendant to stop. The defendant disre *1053 garded this order and instead ran into the residence at 2204 Touro. Both police officers pursued the defendant into the shotgun-style house and saw him running into the bathroom. The officers attempted to enter the bathroom, which was very small, as they heard the toilet flush. Sergeant Lampard forced his way into the bathroom and saw the defendant with his hand in the toilet attempting to shove something inside. The defendant and Sergeant Lam-pard struggled as the officer attempted to pull the defendant away from the toilet. Finally, with the assistance of Officer Razor, Sergeant Lampard subdued the defendant. The sergeant then retrieved two pieces of crack cocaine from the toilet. The sergeant also removed the toilet from the floor but was unable to retrieve any more contraband. As the defendant was being removed from the residence, a glass crack pipe containing residue was discovered on a nightstand. The residue inside the white tube tested positive for cocaine. Sergeant Lampard stated that he sustained a broken bone in his hand which required surgery. The sergeant was unable to state at what point during the struggle he was injured.
Defense counsel cross-examined Sergeant Lampard and Officer Razor at trial at length about their failure to stop the driver of the truck. Sergeant Lampard ^explained that he could not say whether the driver was selling drugs to the defendant or whether the defendant was attempting to sell drugs to the driver but the driver rejected the offer. The officers admitted that no full search of the residence was conducted. Officer Razor testified that no one else was present in the residence, and that he canvassed the backyard after the incident but did not see anyone.
The defense called one witness, Stephanie Finney, the defendant’s wife. She testified that she was washing clothes on the day of the incident. The defendant went to the front door and then came back, stating that two police officers were sitting in front of the house. She claims that the two police officers, one white and one black, entered the house, and one of them pushed the defendant into the bathroom where he began beating him. According to Mrs. Finney, the black police officer simply stood next to her. Mrs. Finney then “eased” her way out of the back door. She further testified that the defendant was wearing only a shirt and underclothes at the time of his arrest. She also stated that they reported the beating of the defendant to O.M.I. Finally, Mrs. Finney testified that the two officers who entered her home were the same two who had previously arrested the defendant and had been harassing him.
The State called Officer Razor as a rebuttal witness. The officer denied that he stood next to Mrs. Finney or that he saw anyone inside the residence except the defendant.

ERRORS PATENT

A review of the record for errors patent reveals none.

ASSIGNMENT OF ERROR NUMBER 1

The appellant contends that the trial court erred when it denied the motion to suppress evidence. He argues that the officers did not have probable cause to arrest him and thus were not justified in pursuing him into the residence.
In State v. Page, 95-2401, p. 10, (La.App. 4 Cir. 8/21/96), 680 So.2d 700, 709, this Court discussed the warrantless entry into a protected area:
There is a justified intrusion of a protected area if there is probable cause to arrest and exigent circumstances. State v. Rudolph, 369 So.2d 1320, 1326 (La.1979), cert. denied., Rudolph v. Louisiana, 454 U.S. 1142, 102 S.Ct. 1001, 71 *1054 L.Ed.2d 294 (1982). Exigent circumstances are exceptional circumstances which, when coupled with probable cause, justify an entry into a “protected” area that, without those exceptional circumstances, would be unlawful. Examples of exigent circumstances have been found to be escape of the defendant, avoidance of a possible violent confrontation that could cause injury to the officers and the public, and the destruction of evidence. State v. Hathaway, 411 So.2d 1074, 1079 (La.1982).
See also State v. Tate, 623 So.2d 908 (La.App. 4 Cir.1993). The determination of probable cause involves factual and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. State v. Ogden and Geraghty, 391 So.2d 434 (La.1980).
In State v. Hathaway, 411 So.2d 1074 (La.1982), officers received a tip that a known drug user would be delivering drugs to a residence in a certain block and that he would be armed. The officers set up a surveillance of the block and saw the user talking to another known drug user and to the defendant, who was unknown to the officers. The officers decided to detain the men, and when they announced their presence and told the men to “freeze,” the other known drug user and the defendant ran inside one of the residences in the block. The officers chased them and entered the residence, where they found the defendant with a gun and the other man trying to flush a syringe. On review of the defendant’s conviction, the Court found the tip, combined with the officers’ observations and their knowledge of two of the men, gave them reasonable suspicion to stop the group. The flight of one of the known users gave them probable cause to believe he was involved in drug activity, and their belief he entered the house to dispose of evidence gave them exigent circumstances |sto follow and enter the house.
In State v. Byas, 94-1999 (La.App. 4 Cir. 12/15/94), 648 So.2d 37, this Court combined the theories of exigent circumstances and hot pursuit. The officers received a tip from a reliable known informant that “Cory” was selling cocaine at a certain address. The confidential informant also stated that “Mary” lived at that address and aided Cory in the operation. The officers went to the residence and saw a man standing outside. The man saw the officers and fled. The next evening, the officers again approached the residence and saw the same man standing outside. Upon seeing the officers, the man fled toward the rear of the residence, and one officer saw him throw a bag, containing a large white object, over a fence into a vacant lot next to the residence. The man ran to the back of the residence, knocked, and was admitted by the defendant. When she saw the officers pursuing, the defendant slammed the door shut. The officers entered and seized the defendant and the man. The officers searched her and found in her pants pocket a matchbox containing three rocks of cocaine. Upholding the officers’ entry into the house and the search of the defendant, this Court noted that the officers had probable cause to arrest the man based upon the tip from the informant, the man’s flight, and his abandonment of the bag containing what appeared to be cocaine. The officers were justified in chasing the man into the residence in “hot pursuit”. This Court further found that once the officers were inside the house, they were justified in arresting the defendant for her commission of acts which constituted resisting arrest and for her participation in the drug operation.
In the instant case the appellant’s counsel in their brief seeks to distinguish Byas by arguing that the police officers lacked *1055 probable cause to arrest because there was no informant’s tip; instead, the defendant was observed standing with a tennis-ball type object in his hand, then elected not to be confronted by the police by entering his residence.
A review of the motion to suppress transcripts reveals additional information which was properly not presented to the jury at trial. This information includes that both the defendant and his residence were well-known to both of the police officers in this case. In fact, they had arrested him only a month before this incident. Officer Razor testified at the May 9, 2000 hearing that he was part of a take-down team which stopped the defendant on September 18, 1999 after observing him engage in narcotics transactions; the defendant threw cocaine and heroin down when stopped. Also, the defendant was observed giving his child drugs to conceal. After the defendant was arrested, he consented to a search of his residence at 2204 Touro at which time more heroin and cocaine were found.
On February 25, 2000, Sergeant Lam-pard gave similar testimony to that of Officer Razor, including that he observed the defendant hand narcotics to his ten-year old son. Sergeant Lampard also stated that the persons believed to have purchased drugs from the defendant on September 18, 1999 were not stopped because the defendant was the “purveyor of narcotics” in the police officers’ estimation. Further, at the time the defendant was arrested, the officers believed that it would not have been easy for the defendant to discard the amount of narcotics in his possession, whereas the purchasers would probably have had only a small amount.
The defendant was handed a white spherical object, approximately the size of a tennis ball, which they believed to be cocaine. The defendant attempted to conceal the object as soon as he saw the officers’ police car. At that point, in light of the officers’ previous experience and knowledge of the defendant as a large-scale drug dealer, there was reasonable suspicion to stop him. When Officer Razor ordered the_[¿defendant to stop, the defendant fled into his house. . This flight, coupled with the attempt to conceal the object and the officers’ prior knowledge of the defendant, is sufficient to give the officers probable cause to believe the defendant was in possession of drugs. The officers did have sufficient probable cause to enter the defendant’s residence.

ASSIGNMENT OF ERROR NUMBER 2

In the second assignment of error, the appellant contends that his life sentence as a fourth offender is excessive. The appellant suggests that, because all of his prior offenses were merely drug possession charges and that the amount in the instant case was small, he is not the most egregious of offenders. The appellant concedes that, because one of his prior convictions involved a drug offense punishable by more than five years, the life sentence he received was the statutorily-mandated minimum sentence.
On April 27, 2000 when the defendant was sentenced, the trial court originally intended to delay the defendant’s sentencing until the completion of his other case, involving the charge of possession with intent to distribute heroin, which at that time was set for trial on May 2, 2000. The disposition of that case is not before us. The defense made no objection to the court’s decision to proceed with sentencing or otherwise suggest that the life sentence was inappropriate or that there was evidence he wished to present.
Furthermore, contrary to the appellant’s argument that he is not the most egregious offender, the record in this case indi *1056 cates that the defendant engaged in an attempt, which was partially successful, to dispose of drugs. During this attempt to dispose of the evidence, the defendant committed a battery on a police officer.
This Court thoroughly discussed the imposition of a life sentence on a drug user in State v. Carter, 99-0779, p. 20 (La.App. 4 Cir. 11/15/00), 778 So.2d 268, 281-282:
Even though a sentence under the Habitual Offender Law is the minimum provided by that statute, the sentence may still be unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, or is nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 677; State v. Dorthey, 623 So.2d 1276, 1280-81 (La.1993). However, the entire Habitual Offender Law has been held constitutional, and thus, the minimum sentences it imposes upon habitual offenders are also presumed to be constitutional. Johnson, 97-1906 at pp. 5-6, 709 So.2d at 675; see also State v. Young, 94-1636, p. 5 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 527, writ denied, 95-3010 (La.3/22/96), 669 So.2d 1223. There must be substantial evidence to rebut the presumption of constitutionality. State v. Francis, 96-2389, p. 7 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461, writ denied, 98-2360 (La.2/5/99), 737 So.2d 741. A defendant must clearly and convincingly show that the mandatory minimum sentence under the Habitual Offender Law is unconstitutionally excessive. Johnson, 97-1906 at p. 11, 709 So.2d at 678. “[D]e-partures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations.” Johnson, 97-1906 at p. 9, 709 So.2d at 677.
The Louisiana Supreme Court has repeatedly held that the Habitual Offender Law is constitutional and that the minimum sentences it imposes upon multiple offenders should be accorded great deference by the judiciary. However, courts have the power to declare a sentence excessive under Article I, Section 20 of the Louisiana Constitution even though it falls within the statutory limits provided by the Legislature. State v. Lindsey, 99-3256 (La.10/17/00), 770 So.2d 339.
In Lindsey, the Supreme Court specifically held:
.... To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:
[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the | flculpability of the offender, the gravity of the offense, and the circumstances of the case.
Id. [Citations omitted.]
In making this determination, we held that “while a defendant’s record of nonviolent offenses may play a role in a sentencing judge’s determination that a minimum sentence is too long, it cannot be the only reason, or even the major reason, for declaring such a sentence excessive.” Id. This is because the defendant’s history of violent or non-violent offenses has already been taken into account under the Habitual Offender Law for third and fourth offenders, which punishes third and fourth offenders with a history of violent offenses more severely than those with a history of non-violent offenses. Id.
In addition, we held that the trial judge must keep in mind the goals of the *1057 statute, which are to deter and punish recidivism, and, we instructed that the sentencing court’s role is not to question the wisdom of the Legislature in requiring enhanced punishments for multiple offenders, but rather to determine whether the particular defendant before it has proven that the minimum sentence is so excessive in his case that it violates Louisiana’s constitution. Id. at 677.
Finally, we held that if a trial judge finds clear and convincing evidence which justifies a downward departure, he is not free to sentence the defendant to whatever sentence he feels is appropriate under the circumstances, but must instead sentence the defendant to the longest sentence which is not constitutionally excessive. Id.
The defendant fails to demonstrate in the case at bar by clear and convincing evidence how he qualifies to be treated exceptionally. It is totally irrelevant in this case that the defendant was charged in another division of criminal court with possession with intent to distribute heroin and that the same police officer is involved in both cases.
Thus, the motion to suppress was properly denied and the life sentence was not excessive.
The conviction and sentence are affirmed.
AFFIRMED.