# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 13-133

**STATE OF LOUISIANA**

**VERSUS**

**DERRICK L. HARRIS**

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 51265
HONORABLE DURWOOD W. CONQUE, DISTRICT JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of Sylvia R. Cooks, Marc T. Amy, and Phyllis M. Keaty, Judges.

                                                    **AFFIRMED.**

**Cooks, J., dissents and assigns written reasons.**

**Michael Harson**
**District Attorney**
**Post Office Box 3306**
**Lafayette, LA   70502-3306**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
      **State of Louisiana**

**F. Stanton Hardee, III**
**Assistant District Attorney**
**100 N. State Street, Suite 215**
**Abbeville, LA   70510**
**(337) 898-4320**
**COUNSEL FOR APPELLEE:**
      **State of Louisiana**

**Brent A. Hawkins**
**Louisiana Appellate Project**
**Post Office Box 3752**
**Lake Charles, LA   70602**
**(337) 502-5146**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Derrick L. Harris**

**Derrick L. Harris**
**Hickory - 1**
**Louisiana State Prison**
**Angola, LA   70712**
**IN PROPER PERSON**

**AMY, Judge.**

Following a bench trial, the defendant was convicted as charged of distribution of marijuana. The trial court imposed a fifteen-year sentence to be served at hard labor. Thereafter, and pursuant to a bill of information filed by the State, the trial court adjudicated the defendant a fourth felony offender, vacated the fifteen-year sentence, and imposed the mandatory life sentence set forth in La.R.S. 15:529.1. Pursuant to the statute, the trial court imposed the sentence without benefit of parole, probation, or suspension of sentence. The defendant appeals. For the following reasons, we affirm.

### Factual and Procedural Background

The State alleged that an undercover sheriff's deputy working with the Vermilion Parish Sheriff's Office located an individual on a street in Abbeville, inquired where he could purchase marijuana, and was taken to a residence. The deputy testified that a subject he identified as the defendant, Derrick L. Harris, walked from the residence and sold him marijuana for $30.

Based on that transaction, the State charged the defendant with distribution of marijuana, a violation of La.R.S. 40:966(A)(1). After the matter proceeded to a bench trial, the defendant was convicted as charged. At sentencing, the trial court sentenced the defendant to fifteen years at hard labor, a mid-range sentence for the conviction of distribution of marijuana.[1] The trial court subsequently denied the defendant's motion to reconsider the sentence.

Following the defendant's conviction, the State filed a bill of information, along with amendments, listing a total of six felonies, including the conviction for

---

[1] See La.R.S. 40:966(B)(3) which provides that a defendant convicted of distribution of marijuana shall "be sentenced to a term of imprisonment at hard labor for not less than five nor more than thirty years, and pay a fine of not more than fifty thousand dollars."

distribution of marijuana. Following a hearing, the trial court adjudicated the defendant a fourth felony offender. Accordingly, the trial court vacated the fifteen-year sentence imposed for distribution of marijuana and imposed a sentence of life imprisonment without benefit of probation, parole, or suspension of sentence.

The defendant appeals, arguing that the sentence of life imprisonment is constitutionally excessive.[2] In addition to his counsel-assisted brief, the defendant advances two assignments of error in proper person, asserting that the trial court erred in admitting testimony that violated the Confrontation Clause and, also, that he did not have the benefit of effective assistance of counsel.

## Discussion

*Errors Patent*

Pursuant to La.Code Crim.P. art. 920, we have reviewed this matter for errors patent on the face of the record. We have identified no such errors.

*Confrontation Clause*

In addressing the underlying conviction for distribution of marijuana, the defendant argues in his brief filed in proper person that the trial court erred in permitting what he contends was impermissible hearsay testimony offered by the State. He argues that the acceptance of the various points of evidence, discussed below, violated the Confrontation Clause. *See* U.S. Const. amend. VI; La.Const. art. 1, § 16.

---

[2] The defendant also reserved the right to file an assignment of error regarding the waiver of his right to jury trial after a supplemental transcript pertaining to that issue was received. However, and although the record now contains that transcript, the defendant did not file a related assignment.

<u>Police Reports</u>

The undercover drug purchase at issue in the distribution of marijuana case involved an undercover officer approaching an individual who, according to testimony, appeared to be a juvenile and who led them to the defendant's location. The defendant questions the State's use of the term "The Juvenile" in the reports of two officers involved in the undercover drug purchase rather than the use of the juvenile's name. The defendant suggests the individual's identity was known to all involved, that everyone was aware that the individual's mother was in a relationship with the defendant, and that the State should have been required to call the individual as a witness so as to permit cross examination. Absent this opportunity, the defendant argues, he could not conduct questioning regarding the video recording of the drug transaction and could not contest the undercover officer's testimony. The defendant also questions the State's failure to call an additional officer as a witness, although the witness was present at trial.

In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354 (2004), the United States Supreme Court explained that the Confrontation Clause prohibits the use of testimonial, out-of-court statements unless the witness is unavailable and the defendant had a prior opportunity to cross-examine that witness. However, the defendant's focus in this argument does not address testimonial, out-of-court statements. The State largely presented its evidence through the testimony of the undercover agent who performed the drug transaction with the defendant. A DVD recording of the alleged exchange was admitted as well. Instead, the defendant complains of the contents of a police report, with references to "The Juvenile," which was not introduced into evidence by the State, and is only contained elsewhere within the record. Similarly, the defendant asserts that he should have

had the opportunity to cross-examine another officer who was present at trial but was not called by the State as a witness. The defendant has not connected that desired witness to any testimonial, out-of-court statement. Accordingly, the defendant's argument lacks merit.

Chain of Custody

The defendant also asserts that the State failed to establish the chain of custody with regard to certain evidence. First, the defendant contends that the underlying offense allegedly occurred on October 2, 2008, yet, the DVD recording of the alleged transaction was dated otherwise. Further, the defendant also questions the fact that the State presented a witness who testified regarding the lab results from the seized marijuana, but that the witness was not the individual who conducted the tests. In support of his argument, the defendant cites *Bullcoming v. New Mexico*, _ U.S. _, 131 S.Ct. 2705 (2011)(wherein the United States Supreme Court explained that, if the State presents a report or certification from tested evidence, then the person called to testify regarding that report or certification must have conducted or observed the underlying testing). The defendant again contends that the State's presentation of evidence in this regard violated the Confrontation Clause.

With regard to the chain of custody of the marijuana, however, the defendant's trial counsel stipulated to the unbroken chain from the point of recovery from the officer to the courtroom. Accordingly, that issue was waived. Neither do we find merit in the defendant's contention that the State's witness who identified the retrieved substance as marijuana did not perform the testing. Rather, Rachel Wickman of the Acadiana Crime Lab testified that she personally performed testing on the submitted sample. The substance had been resubmitted

4

for testing after the analyst who originally tested the substance became unavailable for trial. Thus, as presented, the State's evidence, as complained of by the defendant, does not violate *Bullcoming*, _ U.S. _. Accordingly, this assignment lacks merit.

*Assistance of Counsel*

Additionally, the defendant contends that both his trial and appellate counsel offered ineffective assistance. With regard to his trial counsel, the defendant contends that his attorney failed to adequately conduct pre-trial discovery and investigation. He asserts that such pre-trial investigation would have uncovered additional law enforcement officers involved in the investigation who could have been called as witnesses. Additionally, the defendant notes that a DVD of the alleged drug transaction was played at trial although no audio was available. He argues that other officers could have been called to narrate the DVD and the events captured therein. Finally, and with regard to appellate counsel, the defendant claims that his attorney should have raised the Confrontation Clause argument he raised in proper person, discussed above.

A criminal defendant is guaranteed the effective assistance of counsel pursuant to U.S. Const. amend. VI and La.Const. art. 1, § 13. In pursuit of such a claim of ineffective assistance of counsel, a defendant must establish "(1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect." *State v. Leger*, 05-0011, p. 44 (La. 7/10/06), 936 So.2d 108, 142-43 (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984) and *State v. Washington*, 491 So.2d 1337 (La.1986)), *cert. denied*, 549 U.S. 1221, 127 S.Ct.

1279 (2007). However, a claim of ineffective assistance of counsel is typically more properly resolved by post-conviction proceedings as it allows the trial court to conduct a full evidentiary hearing, if warranted. *Id.* However, if the appellate record contains sufficient evidence to review the defendant's claim, the matter may be considered on appeal in the interest of judicial economy. *Id.*

After review, we conclude that resolution of the defendant's claims regarding the adequacy of pre-trial discovery and decisions of representation regarding the calling of witnesses and lodging of arguments may require the testimony of those involved. Accordingly, we do not consider the defendant's assignment and relegate the argument regarding effective assistance of counsel to post-conviction relief.

*Habitual Offender Sentence*

In counsel-filed brief, the defendant addresses the life sentence imposed following his adjudication as a fourth-felony offender. He references the factual circumstances of the distribution of marijuana offense and notes that the amount was nominal, e.g., less than one gram of marijuana for $30, in arguing that the life-sentence resulting from the habitual offender proceeding is disproportionate. He references a number of mitigating factors from his background and notes that, at the time the trial court imposed the original sentence of fifteen years for the distribution of marijuana conviction, the trial court remarked that he was not the most egregious type of offender.

We first note that the defendant did not object to the life sentence at the time of imposition, nor did he file a motion to reconsider that sentence. In such an instance, La.Code Crim.P. art. 881.1(E) provides that the failure "shall preclude the state or the defendant from raising an objection to the sentence or from urging any

6

ground not raised in the motion on appeal or review." Thus, this court is relegated to a bare claim of excessiveness on review. *See State v. Runnels*, 12-167 (La.App. 3 Cir. 11/7/12), 101 So.3d 1046.

In this instance, the defendant was adjudicated a fourth felony offender. In this regard, Louisiana Revised Statutes 15:529.1 provides, in pertinent part:

> A. Any person who, after having been convicted within this state of a felony, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
>
> . . . .
>
> (4) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then:
>
> . . . .
>
> (b) If the fourth felony and two of the prior felonies are felonies defined as a crime of violence under R.S. 14:2(B), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or of any other crime punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.

The record demonstrates that the State proved that the defendant had a total of six felony convictions: distribution of cocaine, simple burglary, theft with a value between three and five hundred dollars, two counts of simple robbery, and, finally, distribution of marijuana. Pursuant to La.R.S. 14:2(B)(23), the prior convictions for simple robbery are classified as convictions for crimes of violence. Additionally, both the distribution of marijuana and distribution of cocaine convictions were for violations of the controlled dangerous substances law and

7

were punishable by sentences of more than ten years. *See* La.R.S. 40:966(B)(3); La.R.S. 40:967(B)(4)(b). Thus, La.R.S. 15:529.1(A)(4)(b) dictated that "the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence."

As explained in *State v. Johnson*, 97-1906 (La. 3/4/98), 709 So.2d 672, the Louisiana Supreme Court has repeatedly found the habitual offender law of La.R.S. 15:529.1 to be constitutional in its entirety. By extension, its minimum sentences imposed on habitual offenders are presumed to be constitutional as well. *Id.* Although the judiciary affords great deference to the legislature's determination of an appropriate minimum sentence, the court can declare a sentence unconstitutionally excessive under the facts of a particular case even though it falls within the statutory parameters set forth by the legislature. *Id.* However, that power may only be exercised "when the court is clearly and firmly convinced that the minimum sentence is excessive." *Id.* at 676.

The supreme court instructed that a sentencing judge must start with the presumption that the mandatory sentence of the habitual offender law is constitutional and may only depart from that upon a finding of clear and convincing evidence to rebut that presumption. *Johnson*, 709 So.2d 672. Notably,

> A trial judge may not rely solely upon the non-violent nature of the instant crime or of past crimes as evidence which justifies rebutting the presumption of constitutionality. While the classification of a defendant's instant or prior offenses as non-violent should not be discounted, this factor has already been taken into account under the Habitual Offender Law for third and fourth offenders. LSA-R.S. 15:529.1 provides that persons adjudicated as third or fourth offenders may receive a longer sentence if their instant or prior offense is defined as a "crime of violence" under LSA-R.S. 14:2(13). Thus the Legislature, with its power to define crimes and punishments, has already made a distinction in sentences between those who commit crimes of violence and those who do not. Under the Habitual Offender Law those third and fourth offenders who have a history of

8

> violent crime get longer sentences, while those who do not are allowed lesser sentences. So while a defendant's record of non-violent offenses may play a role in a sentencing judge's determination that a minimum sentence is too long, it cannot be the only reason, or even the major reason, for declaring such a sentence excessive.

*Id.* at 676. Rather, and in order to rebut the presumption of constitutionality, a defendant must clearly and convincingly demonstrate that he or she is exceptional. *Id.* On this final point, the supreme court further explained that the defendant must show that he or she is the victim of the legislature's failure to assign sentences that are meaningfully tailored to his or her culpability, the gravity of the offense, and the circumstances of the case. *Id.* In evaluating the defendant's argument regarding a lesser sentence, the trial court must be mindful of the goals of the habitual offender provision. *Id.* As explained in *Johnson*,

> Clearly, the major reasons the Legislature passed the Habitual Offender Law were to deter and punish recidivism. Under this statute the defendant with multiple felony convictions is treated as a recidivist who is to be punished for the instant crime in light of his continuing disregard for the laws of our state. He is subjected to a longer sentence because he continues to break the law. Given the Legislature's constitutional authority to enact statutes such as the Habitual Offender Law, it is not the role of the sentencing court to question the wisdom of the Legislature in requiring enhanced punishments for multiple offenders. Instead, the sentencing court is only allowed to determine whether the particular defendant before it has proven that the mandatory minimum sentence is so excessive in his case that it violates our constitution.

*Id.* at 677.

In this case, the trial court imposed the mandatory life sentence as required by La.R.S. 15:529.1(A)(4)(b). Although the defendant references the trial court's acknowledgement of certain mitigating circumstances and the fact that he was not the worst type of offender under the law, the trial court made those comments at the time of the sentencing for the underlying distribution of marijuana conviction. At that time, the State had urged the imposition of the maximum, thirty-year

9

sentence for that conviction. Finding that the defendant was not the worst offender, however, the trial court imposed a mid-range fifteen-year sentence. Subsequently, and after the habitual offender adjudication, the trial court directly imposed the term of life imprisonment without comment as to mitigating factors.

Additionally, the defendant's argument regarding the excessiveness of his sentence is made in reference to the circumstances of only his last felony conviction for distribution of marijuana. However, the sentence now contested resulted from adjudication under La.R.S. 15:529.1(A)(4)(b). Thereunder, the State demonstrated that the defendant had a total of six felony convictions and that the convictions fit the parameters of the statute. Accordingly, we find no abuse of discretion in the trial court's imposition of the mandatory life sentence described therein.

While we recognize the defendant's contention that the circumstances regarding his most recent conviction do not reflect the most grave type of offense, it is important to recall that La.R.S. 15:529.1(A)(4)(b) is specifically directed to the repeat felony offender. As noted above, the supreme court has remarked that "the defendant with multiple felony convictions is treated as a recidivist who is to be punished for the instant crime in light of his continuing disregard for the laws of our state." *Johnson*, 709 So.2d at 677. In this case, the State clearly demonstrated that the defendant is such a recidivist offender, having been convicted of six felony convictions. In this light, we do not find that the trial court was obligated to find that the circumstances of the defendant's offense(s) were exceptional and supportive of a downward deviation from the mandatory life term of La.R.S. 15:529.1(A)(4)(b). Accordingly, we affirm the defendant's sentence.

This assignment lacks merit.

## DECREE

For the foregoing reasons, the conviction and sentence of the defendant are affirmed.

**AFFIRMED.**

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

13-133

STATE OF LOUISIANA

VERSUS

DERRICK L. HARRIS

COOKS, J. Dissents.

Under the majority's decision, Defendant, an honorably discharged American veteran of Desert Storm, suffering from drug addiction, and unable to get medical help from the U.S. Veterans' Administration, *will spend the rest of his life in prison for selling .69 gram of marijuana* to an undercover police officer who solicited the sale while Defendant was in his own home minding his own business. The majority ignores the fact that the trial court placed the entire record of the conviction for selling this tiny amount of marijuana into the record for the habitual offender hearing, including the transcript of the sentencing hearing at which he went to great lengths to explain why he was imposing *only a fifteen-year sentence* out of a possible thirty years. The majority incorrectly asserts that there was no evidence presented at the hearing on the habitual offender charge, and then fails to conduct even a review for bare excessiveness as required by our longstanding jurisprudence. It certainly is shocking to my conscience as an appellate judge to imagine that this Defendant, in light of the evidence and testimony put forth at his hearings, which the trial judge found to be credible and worthy of note, could be sent to prison for life based on the sale of .69 gram of marijuana. Although his overall record meets the technical criteria to be considered a fourth felony offender, the trial judge specially noted, after fully reviewing his past convictions, that this Defendant is not what the law means to refer to as a "drug dealer" but is simply an addict, who has, in the past, turned to crime to feed his habit. Even so,

1

as the trial judge specially noted on the record, it had been over ten years since Defendant's last conviction until his present conviction for selling a tiny amount of marijuana. Likewise, it is clear that this Defendant is not the type of defendant the legislature envisioned sending to prison for life when imposing the mandatory life sentence for habitual offenders under La.R.S. 15:529.1(A)(4)(b).

The trial judge articulated his belief that Defendant is in need of treatment for drug addiction, but noted regrettably that the law does not allow him to order such treatment but only allows him to suggest to the Department of Corrections that Defendant would benefit from such treatment. The trial judge also noted that he believed Defendant's testimony that he has a drug addiction problem. He also believed the testimony of Defendant's mother regarding Defendant's addiction problem and inability to get help from the Veterans' Administration for his health problem. She testified that her son has had an addiction problem since he returned from Desert Storm. The trial judge noted Defendant sold a small amount of drugs to feed his habit and does not seem to be the more serious type of "drug dealer" whom our laws are aimed at incarcerating for long periods of time. The trial judge remarked "I mean you were not a drug kingpin selling bales of marijuana to school children on the school ground. I mean, that's not the kind of thing that we're looking at here[,]" and further stated "I agree that you're not what we would think of as a drug dealer so far as I can tell." The trial judge further stated "But you are a four-time felon, and that presents problems that I can't overcome for you no matter how much I would want to." The trial judge, in determining the appropriate sentence for Defendant's conviction for distribution of marijuana continued to express his sentiments adding "As I was saying, I think that *the maximum sentence is not what is called for here* . . . The time between your felonies is also kind of interesting, at least for the convictions. You had one in 1994, distribution of cocaine. The simple robbery was also in 1994, the next day. So I'm guessing that

those were related. You had a simple burglary in '97 for which you got six years. And then you were okay until this one, all the way to 2012." (emphasis added)

It should be obvious to any court *reviewing the entire record made part of the habitual offender hearing* that the trial judge, after fully considering Defendant's prior convictions; the gravity of his latest offense which made him a fourth-time offender; the special circumstances of that conviction; and the factors unique to this Defendant, believed the maximum sentence which should be imposed on this Defendant is fifteen years. The State, having pushed for the maximum thirty-year sentence for selling .69 gram of marijuana, (based on the fact that Defendant had prior convictions) dissatisfied with the trial judge's decision, then filed a multiple offender bill triggering a mandatory life sentence. It is clear from the record that the trial judge mistakenly believed he simply had no choice but to impose the mandatory life sentence.

The trial judge committed legal error when he sentenced Defendant to life imprisonment because he believed the law did not *permit* him to do otherwise. Not only does our law *permit* him to deviate from the mandatory sentence, he is in fact "duty bound" to do so if he makes a determination that such punishment would make no measurable contribution to acceptable goals of punishment or that the sentence amounts to nothing more than the purposeful imposition of pain and suffering grossly disproportionate to the severity of the crime. *State v. Doherty*, 623 So.2d 1276 (La.1993). In *State v. Johnson*, 97-1906, p.8 (La. 03/04/98), 709 So.2d 672, 676, quoting *State v. Young*, our state supreme court held a trial judge is permitted to deviate downward from a statutory mandatory minimum sentencing provision of the Habitual Offender Law when a defendant shows by clear and convincing evidence that "[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the

3

offender, the gravity of the offense, and the circumstances of the case. If the trial court does find justification for reducing the mandatory minimum sentence it must then impose "the longest sentence which is not constitutionally excessive" with specific reasons explaining why the sentence it is imposing is in fact the longest sentence not constitutionally excessive as applied. *Johnson*, 709 So.2d 677. The trial judge in this case had *the constitutional authority and duty* to deviate from the mandatory minimum sentence. It is clear from the record that this trial judge did not know that he *could* do so, and that he was, indeed, *duty-bound* to do so. The evidence made part of the record in the habitual offender hearing clearly demonstrates the trial judge did not think this Defendant deserved even thirty years let alone a life sentence. The case should be remanded to the trial court for further proceedings to determine whether this Defendant has shown that "because of unusual circumstances [he] is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case." *Johnson*, 709 So.2d at 676 (*quoting State v. Young*).

The majority is satisfied to stop with the determination that the technical requirements of La.R.S. 15:529.1(A)(4)(b) are satisfied for imposition of a mandatory life sentence without benefit of probation, parole, or suspension of sentence against this Defendant as a fourth felony offender. This however, is by no means the end of the inquiry. Our notions of fundamental fairness and due process of law demand further constitutional considerations of the appropriateness of this life-sentence-without-benefit imposed on this particular Defendant for his particular offense.

As we noted in *State v. Boutte*, 10-928, pp. 5-6 (La.App. 3 Cir. 3/9/11), 58 So.3d 624, 629, *writ denied*, 11-689 (La. 10/7/11) 71 So.3d 314 (emphasis added):

4

Although the minimum sentences imposed upon multiple offenders pursuant to the Habitual Offender Law are *presumed* constitutional, *a court has the power to declare such a sentence excessive under Article I, Section 20 of the Louisiana Constitution. State v. Lindsey*, 99-3302 (La.10/17/00), 770 So.2d 339. "A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality." *State v. Johnson*, 97-1906, p. 7 (La.3/4/98), 709 So.2d 672, 676. To rebut the presumption of constitutionality, the defendant must show that he is ***"exceptional, which in this context means that because of unusual circumstances [he] is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case."*** *Id.* at 676.

I believe it is unconscionable to impose a life-sentence-without-benefit upon this Defendant who served his country on the field of battle and returned home to find his country offered him no help for his drug addiction problem. It is an incomprehensible, needless, tragic waste of a human life for the sake of slavish adherence to the technicalities of law. It is bereft of fundamental fairness, and absent any measure of balance between imposition of the most severe punishment short of death with the gravity and culpability of the offense. I must, therefore, vigorously dissent.