859 So.2d 841 (2003)
STATE of Louisiana, Appellee,
v.
Noble Elias BATES, Appellant.
No. 37,282 KA.
Court of Appeal of Louisiana, Second Circuit.
October 16, 2003.
Rehearing Denied December 4, 2003.
*843 Hersy Jones, Jr., Shreveport, for Appellant, Noble Elias Bates.
Paul J. Carmouche, District Attorney, Tommy J. Johnson Assistant, J. Thomas Butler, Edward M. Brossette, Assistant District Attorney, for Appellee.
Before PEATROSS, DREW and MOORE, JJ.
DREW, J.
Noble Bates appeals two convictions at a bench trial for aggravated criminal damage to property and aggravated flight from an officer. He also appeals the life sentence imposed. We affirm.

FACTS
In the summer of 2000, the defendant was observed shoplifting at the Kroger *844 grocery store on Benton Road in Bossier City. Off-duty detective Sam White approached the defendant, who began fighting White, grabbing at the officer's firearm. Bates freed himself, ran out of the store, and entered his car. When the officer attempted to pull Bates from the vehicle, Bates jerked White partially into the car. With the door swinging open, Bates dragged White around the store parking lot, finally slinging him off. White notified Bossier City Police by pressing an emergency button on his radio. Once police arrived, the defendant stopped his vehicle, observed the officers for a moment, and then rammed into one of the police cars. A chase ensued, beginning on Benton Road and proceeding onto Interstate 20 westbound into Shreveport. The Shreveport Police Department picked up the pursuit through the downtown and Allendale areas.
During the chase, the defendant drove quite recklessly, running several stop signs and red lights. He crossed over yellow lines and drove across medians. He drove up to 70 miles per hour in residential neighborhoods. When the defendant approached another Shreveport police vehicle, he slowed down, then accelerated and struck the vehicle, causing the police car to crash into a light pole and injuring both officers therein. Officer Ramsey received several stitches in the top of his head and several bruises and lacerations on his arms; and Officer Anderson sustained back and shoulder injuries. Their police unit also received heavy damage.
The chase continued up Milam Street and ended at the intersection of Dowling and Patzman Streets, where Shreveport Police Officer Peters was standing. Peters attempted to flag Bates down. During that time, children were crossing the intersection. Peters blocked part of the intersection with his vehicle, but left a portion of the intersection open as an avenue of escape for Bates, in the hope that, if he did not stop, at least he would not strike any children with his car. Upon reaching Peters, Bates accelerated his vehicle toward Peters and the youngsters. Peters drew his weapon and shot three times, striking Bates in the leg. The injured defendant then drove around the corner to Clay Street, where he abandoned his vehicle. After a foot chase, police officers apprehended the defendant, who later received treatment at LSU Medical Center.
After a bench trial, the defendant was found guilty as charged. He was then adjudicated as a third felony offender, and sentenced to life in prison, without the benefit of parole, probation, or suspension of sentence for the aggravated criminal damage to property conviction. For the aggravated flight from an officer conviction, the defendant was sentenced to serve two years at hard labor to run concurrent with any other sentence.

DISCUSSION
Sufficiency of the Evidence
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d *845 Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
Aggravated Criminal Damage to Property
La. R.S. 14:55 provides:
Aggravated criminal damage to property is the intentional damaging of any structure, watercraft, or movable, wherein it is foreseeable that human life might be endangered, by any means other than fire or explosion.
Whoever commits the crime of aggravated criminal damage to property shall be fined not more than ten thousand dollars, imprisoned with or without hard labor for not less than one nor more than fifteen years, or both.
The defendant argues that the crime of aggravated criminal damage to property requires general intent. He contends that there was conflicting testimony by Officers Ramsey and Anderson and that their testimony did not prove that he voluntarily or intentionally struck their patrol car. He further argues that Anderson was not even sure if the defendant's vehicle had actually made contact with the patrol unit.
Shreveport Police Officer Cole testified that the defendant intentionally rammed, at an accelerated speed, the Shreveport Police vehicle in which Ramsey and Anderson were riding, forcing the unit to hit a nearby steel light pole. Ramsey's and Anderson's testimony established they occupied the police unit rammed by defendant, they sustained injuries and under those circumstances, it was foreseeable that human life might be endangered. Ramsey sustained cuts from the collision, a concussion and temporary memory loss, resulting in his missing approximately one month of work. Anderson received back and shoulder injuries. The evidence submitted by the state was sufficient to show that the defendant committed all essential elements of the crime of aggravated criminal damage to property.
Aggravated Flight from an Officer
In pertinent part, La. R.S. 14:108.1 states:
C. Aggravated flight from an officer is the intentional refusal of a driver to bring a vehicle to a stop, under circumstances wherein human life is endangered, knowing that he has been given a visual and audible signal to stop by a police officer when the officer has reasonable grounds to believe that the driver has committed an offense. The signal shall be given by an emergency light and a siren on a vehicle marked as a police vehicle.
D. Circumstances wherein human life is endangered shall be any situation where the operator of the fleeing vehicle commits at least two of the following acts:
(1) Leaves the roadway or forces another vehicle to leave the roadway.
(2) Collides with another vehicle.
(3) Exceeds the posted speed limit by at least twenty-five miles per hour.
(4) Travels against the flow of traffic.
E. Whoever commits aggravated flight from an officer shall be imprisoned at hard labor for not more than two years.
To prove the elements of aggravated flight from a police officer, Bossier City Officer Wells testified when he and Officer Cole arrived at the store, they partially blocked the exit toward which the defendant was traveling. The officers activated the emergency lights on the vehicles, exited their clearly-marked patrol vehicles and gave the defendant repeated verbal commands to exit his vehicle. Their testimony was that defendant stopped, partially exited his vehicle, quickly got back in his vehicle and accelerated out of the parking *846 lot, striking Wells' police vehicle. The chase described earlier ensued with the lights and sirens activated on the pursuing patrol units.
The police described defendant's driving at high rates of speed, well in excess of 25 miles per hour over the posted speed limit. The testimony was that Bates crossed the median, after colliding with the Shreveport Police unit, and traveled against the flow of traffic. McConnell observed the defendant leave the roadway when he crossed over the median; his unit's video camera portrayed the criminal vehicular operation as it happened.
Although the state is only required to prove two aggravating factors for a conviction of aggravated flight from an officer, the state proved all four, and each was proven beyond a reasonable doubt. Based on this record, there is ample evidence to sustain both convictions.
Mandatory Life Sentence
The defendant argues that the trial court failed to conduct a constitutional analysis of mitigating factors in the record prior to sentencing him to the mandatory life sentence under La. R.S. 15:529.1. He also asserts the testimony of four doctors confirmed that he suffers from various mental illness disorders. The defendant argues that evidence showed that he was "in a state of paronoia [sic] due to his psychological illness." He urges that his conviction and sentence for the aggravated criminal damage to property should be vacated and set aside. The record does not show a response from the state to this assignment of error. He argues that his "mental condition was more so attributed to his failure to take prescribed medication and that all crimes committed by the defendant, a Vietnam war veteran, occurred after he was diagnosed with auditory hallucinations, post-traumatic stress disorder as well as schizophrenic paranoid (sic)." The defendant also contends that based on a psychiatric evaluation performed by Dr. Paul Ware, "at the time of the arrest and his behavior and the reason for arrest, he was psychotic, overly suspicious, paranoid, and misperceiving his environment and actually was not aware of the wrongness of the wrongness [sic] of his behavior." Bates further argues that there was ample evidence of factors mitigating against the imposition of the mandatory life sentence. In response, the state relies upon Bates' stunning 63 prior arrests and 23 prior convictions.
Citing State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, the supreme court in State v. Lindsey, 99-3302 (La.10/17/00), 770 So.2d 339 repeats:
To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:
[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
Lindsey at p. 343.
Since the Habitual Offender Law is presumed constitutional, the minimum sentences it imposes upon multiple offenders are also presumed to be constitutional. State v. Johnson, supra. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case which would rebut this presumption of constitutionality. State v. Johnson, supra. Downward departures from the minimum sentence under the Habitual Offender Law should occur only in rare cases in which the punishment violates the prohibition of *847 La. Const. art. I, § 20 against excessive sentences. State v. Johnson, supra.
A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
The Habitual Offender Law seeks to both deter and punish recidivism by treating a defendant with multiple felony convictions as a recidivist who is to be punished for a particular crime in light of his continuing disregard for the laws of our state. State v. Johnson, supra and State v. Lindsey, supra. It was Bates' burden to prove the extraordinary reason for a downward departure and he failed to do so. With 63[1] arrests and two dozen convictions, the only exceptional circumstance is what an extraordinary reprobate the Bates is.
The defendant points to some testimony urging that the defendant suffered from auditory hallucinations and post-traumatic stress disorder and that Bates was diagnosed as a schizophrenic paranoid. Defendant argues that the initial report of the examining psychiatrist, Dr. Paul Ware, stated the defendant was not aware of the wrongness of his actions. During trial, Ware testified that after evaluating the defendant, his final determination was that Bates was aware of the wrongness of his actions and/or knew the difference between right and wrong at the time of the incident. In a motion to reconsider sentence, defendant argues that the court did not take into account the defendant's mental condition at the time he committed the instant crimes. This bare allegation does not rise to a threshold level by which to rebut the presumption that a mandatory sentence under the Habitual Offender Law is constitutional.
When viewed in light of the harm done to society, the punishment Bates received does not shock the sense of justice. The record reflects that the defendant could appreciate the wrongness of his actions and was conscious of the difference between right and wrong. He did not show any regard for human life as he fled the police. He intentionally damaged police property wherein it was foreseeable that human life might be endangered. The instant offense of aggravated criminal damage to property was his third felony conviction and the mandatory life sentence is appropriate.
The Mayeux Argument
Defendant argues that the trial court erred in sentencing the defendant under the version of La. R.S. 15:529.1 in existence at the time the defendant committed the instant offense, rather than the version in existence at the time he was convicted of the third felony, citing State v. Mayeux, 01-3195 (La.6/21/02), 820 So.2d 526, in which the Louisiana Supreme Court held that the version of the DWI statute in effect at the sentencing of the offense applied because the statute provided for its application "upon conviction" rather than upon commission of the third felony.
The state correctly argues that the case law cited by defense counsel does not apply *848 to the Habitual Offender Statute. In Mayeux, the Louisiana Supreme Court, in a plurality decision, was addressing DWI cases only, clearly resorting to its policymaking function as well as analyzing closely the wording peculiar to La. R.S. 14:98 E. In State v. Wade, 36,295 (La.App.2d Cir.10/23/02), 832 So.2d 977, writ denied, 02-2875 (La.4/4/03), 840 So.2d 1213, we held the 2001 amendment to La. R.S. 15:529.1 is prospective only.
Bates committed aggravated criminal damage to property on July 20, 2000. After being adjudicated a third felony offender, the defendant was correctly sentenced by the court under the Habitual Offender Law in effect at the time the criminal act was committed. At the time of the commission of the instant offense, La. R.S. 15:529.1(A)(b)(ii) stated:
If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without the benefit of parole, probation, or suspension of sentence.
The sentencing judge applied the appropriate law at sentencing.
Motion In Arrest of Judgment
According to Bates, the state used the act of the collision that occurred between his vehicle and the police unit occupied by Officers Ramsey and Anderson to satisfy elements in both the aggravated criminal damage to property charge and the aggravated flight from an officer charge. Bates asserts that evidence adduced at trial indicates the offenses are based upon the same intertwined and inseparable transactions, claiming that prosecution on both counts constituted double jeopardy.
Double jeopardy provisions protect an accused not only from a second prosecution for the same offense, but also multiple punishments for the same criminal offense. State v. Vaughn, 431 So.2d 763 (La.1983); State v. Gay, 36,357 (La. App.2d Cir.10/23/02), 830 So.2d 356. The test enunciated by the United States Supreme Court for determining whether two offenses are the same for double jeopardy purposes is whether each statute requires proof of an additional element which the other does not. Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); State v. Steele, 387 So.2d 1175 (La.1980).
The "same evidence" test is used in Louisiana. State v. Bonfanti, 262 La. 153, 262 So.2d 504 (1972); State v. Didier, 262 La. 364, 263 So.2d 322 (1972). If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial. State v. Steele, supra; State v. Doughty, 379 So.2d 1088 (La. 1980). If each offense requires proof which the other does not, then the two offenses are not subject to a double jeopardy plea.
The record indicates that, under La. C. Cr. P. art. 859, the defendant submitted a motion in arrest of judgment on count two, aggravated criminal damage to property. The trial court denied this motion, finding that the particulars of the instant facts and the language of these two statutes adequately sustain both convictions. By definition, the crimes of aggravated flight from an officer and aggravated criminal damage to property are not the *849 same offenses and have different required elements; i.e., each offense requires proof that the other does not.
Flight from an officer is a misdemeanor requiring proof of a driver's failure to stop when being pursued by an officer of the law who is utilizing lights, siren, and a marked unit to effectuate the stop. La. R.S. 14:108 A. and B. To get this crime into a felony category, as charged here, there must also be competent proof of two of four aggravating circumstances. In this case, all four aggravating factors were present.
1. Speed at least 25 mph over the posted speed limit,
2. Traveling against traffic,
3. Leaving the roadway, and
4. Causing a collision.
Only the last of these elements, a collision, is even arguably necessary to establish one of these four possible aggravating elements, proof of two of which are required to prove aggravated criminal damage to property. However, the contemplated defendant under aggravated flight from an officer is the driver of a motor vehicle. The contemplated defendant in aggravated criminal damage to property could be a pedestrian hurling a rock, a rifle, or a raccoon.
Proof was had here that Mr. Bates committed all four aggravating elements; therefore, proof of a collision was not necessary to support the conviction of aggravated flight from an officer. Aggravated criminal damage to property was proven here by an intentional vehicular collision wherein the danger to human life was readily apparent. This is a separate crime from aggravated flight from an officer. Double jeopardy does not apply here.
Bill of Information
The defendant argues that the bill of information failed to state the amount of damage on the aggravated criminal damage to property charge, nor did the state present any evidence regarding the amount of damage during the trial. He contends that this is error patent and that his conviction must be reversed and his sentence set aside, relying upon State v. Bass, 509 So.2d 176 (La.App. 1st Cir.1987).
Jurisdictional defects, discoverable as error patent on the face of the record, are those defects which, even conceding the accused's factual guilt, do not permit his conviction of the offense charged. State v. Kendrick, 34,097 (La. App.2d Cir.12/20/00), 779 So.2d 884. La. Const. Art. 1, § 13 requires that a criminal defendant shall be informed of the nature and cause of the accusation against him. State v. Kendrick, supra.
While the punishment for simple criminal damage to property is dependent upon the amount of damage to the property, no such requirement exists for aggravated criminal damage to property under La. R.S. 14:55. The defendant's reliance on State v. Bass, supra, is misplaced. In Bass, the First Circuit Court of Appeal was dealing with a defective bill of information for a simple criminal damage to property charge. In a charge of simple criminal damage to property the bill of information must allege an amount of damage committed or the bill of information is defective. See, La. R.S. 14:56; State v. Bass, supra. However, in the instant case, the bill of information charging the defendant with aggravated criminal damage to property clearly informed Bates as to the accusation. His convictions and sentence are well-deserved.

DECREE
The defendant's conviction and sentence are AFFIRMED.

*850 APPLICATION FOR REHEARING
Before WILLIAMS, GASKINS, PEATROSS, DREW and MOORE, JJ.
Rehearing denied.
NOTES
[1] Possibly a North Louisiana record.