LEON A. CANNIZZARO, JR., Judge.
[ t This case involves an appeal regarding the length of the sentence received by the defendant, Oliver J. Jarreau, Jr., under the Habitual Offender Law, La. R.S. 15:529.1, as it was in effect on November 25, 1998, the date that Mr. Jarreau committed a third offense under that statute. Mr. Jar-reau was sentenced to life in prison without the benefit of probation, parole, or suspension of sentence, and he is appealing his sentence as being excessive.[1]
STATEMENT OF THE CASE
Mr. Jarreau was charged in a bill of information with possession of cocaine in violation of La. R.S. 40:967. He pled not guilty at his arraignment. He was tried by a jury and was found guilty as charged. Six months later he was adjudicated a third-felony offender and sentenced to life imprisonment under the Habitual Offender Law. His motion for an appeal was granted.
In State v. Jarreau, 2000-2013 (La.App. 4 Cir. 12/27/01), 810 So.2d 585, unpub., writ denied, 2002-0291 (La.10/25/02), 827 So.2d 1171, this Court rendered an opinion in connection with Mr. Jarreau’s appeal. Among the assignments of error raised by Mr. Jarreau on appeal were his claims that his sentence was excessive and that the trial court had failed to rule on his motion to reconsider his sentence. This Court found that there had been no ruling by the trial court on the motion to reconsider his sentence and, therefore, preter-mitted any consideration of Mr. Jarreau’s assertion that his sentence was excessive. On appeal this Court considered Mr. Jar-reau’s other assignments of error and affirmed Mr. Jarreau’s conviction but remanded the case to the trial court for a ruling on his motion to reconsider his sentence.
On remand on July 8, 2003, the trial court denied the motion to reconsider the sentence. Mr. Jarreau asserts that he was never notified of the ruling on the motion, and there is nothing in the record to contradict his assertion. Never having received notice that the motion to reconsider his sentence had been denied, on December 18, 2004, Mr. Jarreau filed in the trial court a motion to compel the trial court to rule on the motion to reconsider his sentence and a request for an appeal if the court denied the motion. In January of 2005, the trial court entered a judgment (1) denying the motion to compel on the ground that it was moot, because the motion to reconsider the sentence had already been denied, and (2) granting a pro se appeal solely on an assignment of error regarding Mr. Jarreau’s sentence.
STATEMENT OF FACTS
New Orleans Police Department (“NOPD”) Officer Bret Charles testified at *158 Mr. Jarreau’s trial that as he was driving down the street in a marked patrol car with his partner, NOPD Officer Lamar Davis, they observed two people sitting on [3the steps of an abandoned house in the 1000 block of North Robertson Street in New Orleans. Officer Charles testified that he was familiar with the area and that the steps of the abandoned house were a known location for drug sales. According to Officer Charles’ testimony, as he and his partner drove in front of the abandoned house, Mr. Jarreau immediately stood up and walked away from the police car. Officer Charles then stopped the ear, exited the vehicle, and asked Mr. Jarreau to approach the police car. Officer Charles testified that he called Mr. Jarreau several times but that instead of approaching the police car, Mr. Jarreau continued walking past two additional houses and then threw an object into the yard of the residence located at 1022 North Robertson Street. Because Mr. Jarreau had not stopped as requested, Officer Charles pursued him and was only a few feet away from him when he threw the object.
As soon as he saw Mr. Jarreau throw the object, Officer Charles told Mr. Jar-reau to walk back to the police car, which he did, and Officer Davis detained Mr. Jarreau. Meanwhile, Officer Charles climbed over a chain link fence and retrieved the object that had been thrown. The object, which was a glass tube with a white substance in it that Officer Charles believed to be crack cocaine, was found on a sidewalk running alongside the residence at 1022 North Robertson Street. The glass tube was recovered in a cracked condition, and Officer Charles speculated that it might have broken when it fell on the concrete sidewalk where it was found.
Officer Davis testified at the trial also, and his testimony corroborated Officer Charles’ testimony. Officer Davis further stated that he saw Mr. Jarreau discard an object that, based on his experience, he believed to be some type of contraband. After Officer Charles recovered the glass tube, Officer Davis placed |4Mr. Jarreau under arrest and searched him. When he searched Mr. Jarreau, Officer Davis found in one of Mr. Jarreau’s pants pockets some wire mesh and a plastic bag. Officer Davis testified that these items could be used as drug paraphernalia.
At the trial NOPD Officer Harry O’Neal, a crime laboratory chemist, identified a laboratory report that reflected that a piece of glass pipe containing residue and an accompanying piece of metal mesh had tested positive for cocaine. NOPD criminalist William Giblin, who was not in court, had performed the testing on the pipe and the mesh for the presence of cocaine, and the test was positive. It was stipulated that had Officer Giblin testified at the trial, (1) he would have been qualified as an expert in analyzing and identifying controlled dangerous substances, (2) he would have testified that he had tested the crack pipe and accompanying mesh seized in connection with this case and introduced into evidence at the trial, and (3) he would have testified that the pipe and the mesh had tested positive for cocaine. Officer O’Neal also stated that the amount of cocaine on the crack pipe was an extremely small amount, which he admitted was possibly one one-thousandth of a gram. He further said that theoretically one could scrape the residue out of the crack pipe and smoke it but that it probably had no value. Officer O’Neal also explained that the wire mesh that accompanied the pipe was normally inserted inside of the glass tube of the pipe and that crack cocaine was normally placed on the wire mesh in the end of the tube, lit, and then inhaled through the tube.
*159 Mr. Jarreau, who was fifty years old at the time of the trial, testified that when he was arrested, he had been dropped off at North Robertson Street and Orleans Avenue by his boss so that he could go to his sister’s home four blocks away at North Robertson and Ursuline Streets. He stated that he had walked past | Rtwo men he knew who were sitting on the steps of an occupied house. He spoke to the two men and continued walking. When he got to the abandoned house next door to the house where the two men were sitting on the steps, he testified that one of the men who had been sitting on the steps rushed past him at the time that a police car arrived. Mr. Jarreau further testified that the police officers in the car used a loudspeaker system in their car to tell him to stop.
Mr. Jarreau said that he stopped and turned around and that Officer Charles exited the police car and used a flashlight to check the gutters and the porch of the abandoned house. Then, according to Mr. Jarreau’s testimony, Officer Charles jumped over a fence at an occupied house and retrieved a brown bag with a crack pipe in it. Mr. Jarreau said that it was dark at 6:30 p.m. in November when Officer Charles retrieved the crack pipe. Mr. Jarreau said that he had never before been arrested for a drug offense, that he did not use drugs, and that he had not thrown any objects over a fence.
After Mr. Jarreau was found guilty of possession of cocaine, he was adjudicated as a third-felony offender under the Habitual Offender Law, La. 15:529.1, as that statute was in effect when Mr. Jarreau committed the crime of possession of cocaine. Mr. Jarreau had been convicted of two felonies prior to his conviction for possession of cocaine. In 1986, he had been convicted of second degree battery in violation of La. R.S. 14:34.1, and in 1992, he had pled guilty to possession of an unregistered firearm in violation of La. R.S. 40:1785. At the time Mr. Jarreau committed the crime of possession of cocaine, La. R.S. 15:529.1(A)(l)(b)(ii) mandated a life sentence in connection with Mr. Jarreau’s two prior convictions and his conviction for possession of cocaine.
J^DISCUSSION
Mr. Jarreau has raised both pro se and through his counsel a single assignment of error, which relates to his sentence. He has also raised five additional assignments of error pro se.[2] Because the current appeal was granted solely with regard to Mr. Jarreau’s sentence, we will only consider the assignment of error raised in connection with his sentence.

Assignment of Error: The trial court imposed an excessive sentence.

Applicable Law

Mr. Jarreau contends that the life sentence imposed on him as a third felony offender is constitutionally excessive. The United States Constitution prohibits “cruel and unusual punishment.” U.S. Const, amend. VIII. The Louisiana Constitution expressly provides that “[n]o law shall subject any person to cruel, excessive, or unusual punishment.” La. Const, art. 1, § 20.
*160 In State v. Baxley, 94-2982 (La.5/22/95), 656 So.2d 973, 977, reh’g denied, (11/22/95), the Louisiana Supreme Court stated that the deliberate inclusion of the prohibition against excessive sentences in the state constitution by its redactors imposed on the court the duty to review the sentencing provisions of criminal statutes. The Supreme Court further stated that the court is permitted to determine both whether the statutory range of sentences and the sentence of a particular offender is excessive, even if that offender’s sentence were within the prescribed statutory range. Id.
In State v. Bonanno, 384 So.2d 355 (La.1980), the Louisiana Supreme Court discussed the criteria for determining whether a sentence is unconstitutionally excessive as follows:
[T]o determine whether a certain penalty is excessive we must determine whether that penalty is grossly disproportionate to the severity of the crime. To determine whether the penalty is grossly disproportionate to the crime we must consider the punishment and the crime in light of the harm to society caused by its commission and determine whether the penalty is so disproportionate to the crime committed as to shock our sense of justice.
384 So.2d at 358 (citations omitted).
Mr. Jarreau was sentenced to life in prison under La. R.S. 15:529.1(A)(l)(b)(ii), as it was in effect when he committed the crime of possession of cocaine. That statute read in relevant part as follows at that time:
A. (1) Any person who, after having been convicted within this state of a felony ... thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
[[Image here]]
(b) If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) ... the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
In the instant case, Mr. Jarreau was convicted of three felonies: the instant conviction for possession of cocaine; a conviction for second degree battery in 1986; and a conviction for possession of an unregistered firearm in 1992. Because the second degree battery conviction was defined as a crime of violence under La. R.S. 14:2(13), La. R.S. 15:529.1(A)(l)(b)(ii) required that Mr. Jarreau be sentenced to life in prison.
In State v. Sepulvado, 367 So.2d 762 (La.1979), the Louisiana Supreme Court held that “the imposition of a sentence, although within the statutory limit, may violate a defendant’s constitutional right against excessive punishment that is enforceable by this court on appellate review of his conviction.” 367 So.2d at 767. In State v. Lobato, 603 So.2d 739 (La.1992), the Supreme Court held that “[a] sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering.” 603 So.2d at 751 (citation omitted). Additionally, “[a] sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice.” Id.
In State v. Dorthey, 623 So.2d 1276 (La.1993), the Louisiana Supreme Court further held as follows with respect to mandatory sentencing under the Habitual Offender Law:
If ... when [the] defendant is ultimately sentenced, the trial judge were to find that the punishment mandated by R.S. *161 15:529.1 makes no “measurable contribution to acceptable goals of punishment” or that the sentence amounted to nothing more than “the purposeful imposition of pain and suffering” and is “grossly out of proportion to the severity of the crime”, he has the option, indeed the duty, to reduce such sentence to one that would not be constitutionally excessive.
623 So.2d at 1280-81.
In State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, reh’g denied, (5/3/98), the Supreme Court discussed the Dorthey case and set forth the guidelines that courts must use in determining whether a sentence imposed under the Habitual Offender Law is unconstitutionally excessive. The Supreme Court stated that “the Legislature’s determination of an appropriate minimum sentence should be afforded great deference by the judiciary.” 97-1906, p. 6, 709 So.2d at 676. Nevertheless, the judiciary is not without authority to hold that a sentence is unconstitutional if a mandatory sentence is excessive in a particular case. Id. The judiciary’s power in this regard should only be exercised when a court is “clearly and firmly convinced that the minimum sentence was excessive.” Id.
In the Johnson case, the Supreme Court stated that the “sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional.” 97-1906, p. 7, 709 So.2d at 676. There must be clear and convincing evidence to rebut the presumption of constitutionality in a particular case if the sentencing judge departs from the minimum sentence mandated by the Habitual Offender Law. Id. The Supreme Court then formulated the following guideline for determining whether the presumption of constitutionality has been rebutted. The Supreme Court stated:
Instead, to rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:
[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
97-1906, p. 8, 709 So.2d at 676, quoting State v. Young, 94-1636, pp. 5-6 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 528 (Plotkin, J., concurring).
If a sentencing judge does find clear and convincing evidence sufficient to justify a downward departure from the minimum sentence required by the Habitual Offender Law, the judge is not free to impose whatever sentence the judge thinks is appropriate under the circumstances. 97-1906, p. 8, 709 So.2d at 677. He must, instead sentence the defendant to the longest sentence that is not constitutionally | inexcessive. Id. Additionally, the judge must articulate specific reasons that the sentence he or she imposes is the longest sentence that is not constitutionally excessive. 97-1906, p. 9, 709 So.2d at 677.
More recently, in State v. Lindsey, 99-3256, 99-3302 (La.10/17/00), 770 So.2d 339, the Supreme Court followed the guidelines set forth in the Johnson case. In the Lindsey case, the Supreme Court stated that “[a] sentencing court should exercise its authority to declare excessive a minimum sentence mandated by the Habitual Offender Statute only under rare circumstances, as set forth in State v. Johnson.” 770 So.2d at 346 (emphasis in original).

*162
Analysis

In Mr. Jarreau’s case, he was sentenced under La. R.S. 15:529.1(A)(l)(b)(ii) as it was in effect at the time that he committed the felony of possession of cocaine. While that version of the statute was controlling in the instant case and mandated a life sentence, La. R.S. 15:529.1(A)(l)(b)(ii) was amended effective June 15, 2001, to provide that a mandatory life sentence shall be imposed only if all three of the felonies of which the defendant has been convicted fall within one of the following categories: (1) crimes of violence as defined in La. R.S. 14:2(13); (2) sex offenses, as defined in La. R.S. 15:540 et seq., in which the victim is under the age of eighteen at the time of the commission of the offense; (3) violations of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for at least ten years; or (4) other crimes punishable by imprisonment for at least twelve years. Under the Habitual Offender Law prior to its amendment in 2001, only one of the In three felonies had to fall within the categories enumerated in La. R.S. 15:529.1(A)(l)(b)(ii).[3]
Had Mr. Jarreau committed the crime of possession of cocaine after the amended version of La. R.S. 15:529.1(A)(l)(b)(ii) became effective, he would not have been subject to a mandatory life sentence. Because Mr. Jarreau’s conviction of possession of cocaine was not punishable by a minimum sentence of ten years, was not a sex crime, and was not a crime of violence, it falls outside the scope of the four categories enumerated above. Similarly, because his conviction of possession of an unregistered firearm is not a crime of violence, a sex crime, a violation of the Controlled Dangerous Substances Law, or a crime punishable by imprisonment for at least twelve years, it, too, falls outside the scope of the four categories. Only Mr. Jarreau’s conviction of second degree battery fell within one of the enumerated categories, because it was a crime of violence.
The amended provisions of La. R.S. 15:529.1(A)(l)(b)(i) would have been applicable to Mr. Jarreau’s sentence had he committed the crime of possession of cocaine after June 15, 2001. That statute provides in relevant part as follows:
A. (1) Any person who, after having been convicted within this state of a felony ... thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
[[Image here]]
(b) If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then:
(i) The person shall be sentenced to imprisonment for a determinate term not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction; ....
hi>The longest possible sentence for the crime of possession of cocaine is not more than five years. La. R.S. 40:967(C)(2). Therefore, had he committed the crime of possession of cocaine after June 15, 2001, he would have been subject to a maximum sentence of ten years and to a minimum sentence of forty months. Instead, because he committed the crime a little more than two and a half years prior to the amendment of La. R.S. 15:529.1, Mr. Jar-reau was sentenced to life imprisonment as *163 mandated by that statute prior to. its amendment in 2001.
While it is clear that the amendments to La. R.S. 15:529.1 were not given retroactive effect,[4] that does not mean that this Court cannot consider the fact that the amendment to La. R.S. 15:529.1 expressed the legislative will at the time it was passed. This, of course, must be considered in conjunction with the other factors that are present in Mr. Jarreau’s case.
In Mr. Jarreau’s case, the crime of violence that was committed by Mr. Jarreau and used as a predicate offense for purposes of adjudicating him a third-felony offender under the Habitual Offender Law occurred in 1986, twelve years prior to Mr. Jarreau’s commission of the crime of possession of cocaine. Although the crime of possession of an unregistered firearm is a very serious offense, it is not one that the legislature has ever found to be a trigger for the imposition of a life sentence under the Habitual Offender Law. Additionally, according to the State’s evidence, the amount of cocaine of which Mr. Jarreau was convicted of possessing was miniscule, it had no monetary value, and it would, in all likelihood, have had no effect on a person who used it. To enhance Mr. Jar-reau’s sentence from five [ 13years, or even ten years[5], to life imprisonment appears to be an unduly harsh result in the instant case.
Mr. Jarreau’s court appointed attorney argued at the sentencing hearing that the DoHhey case should be considered in sentencing Mr. Jarreau. Mr. Jarreau’s counsel also argued that it would be unconscionable for a possession of cocaine residue conviction to trigger the imposition of a life sentence. Although Mr. Jarreau was previously convicted of a single crime of violence, his attorney suggested that he had received a relatively light sentence, indicating that the judge in that case thought that Mr. Jarreau’s crime was not as serious as some others. There is also nothing in the record to indicate that the trial court judge believed she could even consider any sentence other than a mandatory life sentence under the Habitual Offender Law.
Because Mr. Jarreau’s counsel did not offer any meaningful or significant mitigating factors for the trial court judge to consider in imposing sentence upon Mr. Jarreau, there is no way for us to know whether the trial court judge would have considered them in her sentencing decision. Among the mitigating factors that might be entitled to consideration at a sentencing hearing are the following:
1. the defendant’s juvenile history;
2. the defendant’s other adult record;
3. the defendant’s education;
4. the defendant’s employment history;
5. the presence or absence of substance abuse on the part of the defendant;
6. the family support system available to the defendant
|u7. the presence of physical or mental conditions suffered by the defendant;
8. the defendant’s ties to a community; and
9. the defendant’s military service or lack of service.
Although the attorneys who represent indigent defendants perform an extremely valuable public service and do so quite ably under very difficult conditions, the Louisi *164 ana Supreme Court has recognized that indigent defenders are often overworked. See, e.g., State v. Cunningham, 2004-2200 (La.6/13/05), 903 So.2d 1110, 1127 (Johnson, J., dissenting), where Justice Johnson stated that “[w]e know from experience that public defenders are overworked and assigned hundreds of cases” and “have limited staff for investigation and fewer financial resources.” See also State v. Peart, 621 So.2d 780 (La.1993), where the Supreme Court said that “[i]n light of the unchallenged evidence in the record, we find that because of the excessive caseloads and the insufficient support with which their attorneys must work, indigent defendants ... [in the Criminal District Court for the Parish of Orleans] are generally not provided with the effective assistance of counsel the constitution requires.” 621 So.2d at 789-90 (footnote omitted).
Because those who defend indigent defendants are often overworked, it may not be realistic for an indigent defender to not only prepare for a defendant’s trial but also investigate mitigating factors that should be presented at the defendant’s sentencing if the defendant is convicted. In such cases, a pre-sentence report from the Louisiana Department of Corrections is an invaluable tool that can be used at a defendant’s sentencing hearing.
Further, we think that it is unlikely that a reasonable jury would have convicted Mr. Jarreau of possession of cocaine had the jury been aware that Mr. Jarreau would receive a mandatory life sentence as a result of the conviction. We|1Balso think that the legislature recognized the possible patent unfairness of a sentence such as Mr. Jarreau’s when it amended La. R.S. 15:529.1 in 2001.
Based on the record before us, we find that the sentence imposed upon Mr. Jar-reau at the age of fifty makes no measurable contribution to acceptable goals of punishment. It appears from the face of the record that the life sentence is grossly out of proportion to the severity of the crime and the harm to society that it caused. Additionally, Mr. Jarreau would have faced a maximum of ten years in prison under the current Habitual Offender Law, and we find that on the face of the record, the sentence that he received could be shocking to the conscience when this fact is considered.
Because we do not have a pre-sentence report, we do not have sufficient information about Mr. Jarreau, his propensity for violence, and his amenability to rehabilitation to determine whether the sentence received by Mr. Jarreau is, in fact, excessive. We do note that the State stated on the record at Mr. Jarreau’s sentencing hearing that Mr. Jarreau had been offered a plea bargain that he rejected that would have resulted in a sentence of thirty months as a second-offender under the Habitual Offender Law. From this we infer that the State did not believe that Mr. Jarreau’s crime and his criminal propensities were of such magnitude that he should be subjected to a lengthy sentence, much less a sentence of imprisonment for the rest of his life.
Based on the foregoing discussion, we hereby vacate Mr. Jarreau’s sentence and remand this case so that Mr. Jarreau can be resentenced. In sentencing Mr. Jarreau on remand, the trial court is to order a pre-sentence investigation. Before he is resentenced, Mr. Jarreau shall have an opportunity to present evidence to support his claim that he is one of those exceptional defendants “which ... means 11Bthat because of unusual circumstances this defendant is a victim of the legislature’s failure *165 to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.” State v. Young, 94-1636 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 531 (Plotkin, J., concurring). Based on this opinion and the report of the pre-sentence investigation, the trial court shall determine whether the life sentence mandated by La. R.S. 15:529.1, as in effect at the time Mr. Jarreau committed the crime of possession of cocaine, was constitutionally excessive as it was applied to him under the particular circumstances of his case.
DECREE
This case is hereby remanded to the trial court for further proceedings. Mr. Jarreau is to be resentenced after a pre-sentence investigation has been obtained from the Louisiana Department of Corrections and after the trial court has made a determination whether the minimum sentence mandated by La. R.S. 15:529.1, as in effect at the time Mr. Jarreau committed the crime of possession of cocaine, was constitutionally excessive. Our decision in this appeal shall, however, have no effect on Mr. Jarreau’s conviction of possession of cocaine and his adjudication as a third-felony offender under the Habitual Offender Law.
SENTENCE VACATED AND REMANDED FOR RESENTENCING.

. We note that there was no oral appellate argument on behalf of Mr. Jarreau. In cases such as this where a person has received a life sentence and there may be valid arguments to support a claim that the sentence is unconstitutional under the state or federal constitution, it is very helpful to this Court to have the benefit of oral argument by both the State and the defense. While the failure of Mr. Jar-reau's court appointed counsel to present oral argument on his behalf does not constitute ineffective assistance of counsel in this case, there might be situations where the failure to present oral argument on behalf of a client could constitute ineffective assistance of counsel.

. Mr. Jarreau's additional assignments of error were: (1) that his charge as a third-felony offender was by a bill of information rather than a grand jury indictment; (2) that his adjudication under the Habitual Offender Law was tried by a judge rather than a jury; (3) that he was tried by a six-person instead of a twelve-person jury; (4) that his motion to quash his indictment under the Habitual Offender Law was denied; and (5) that the State usurped the importance of a jury verdict in connection with his conviction of cocaine possession and his adjudication under the Habitual Offender Law.

. We note that there were only three categories of crimes enumerated in La. R.S. 15:529.l.(A)(l)(b)(ii) when Mr. Jarreau had committed the crime of possession of cocaine. The sex crimes category was added later.

. Section 6 of Acts 2003, No. 1231, which amended the Habitual Offender Law, provided that "[t]he provisions of this Act shall only have prospective effect.”

. Ten years is the maximum sentence that Mr. Jarreau could have received for his crimes under the Habitual Offender Law now in effect.