CHEHARDY, C.J.
*997 On appeal, defendant challenges the sufficiency of the evidence used to convict him, the trial court's denial of his verbal motion to continue, and the excessiveness of his sentence. For the following reasons, we affirm defendant's conviction, vacate defendant's sentence as unconstitutionally excessive, and remand for resentencing.
Procedural History
On August 19, 2016, the Jefferson Parish District Attorney filed a bill of information charging defendant, Mark Priest, with one count of possession of over four hundred grams of methamphetamine, in violation of La. R.S. 40:967(F). Trial commenced on May 14, 2018. At the conclusion of the two-day bench trial, the trial judge found defendant guilty as charged. On May 24, 2018, the trial court sentenced defendant to thirty years imprisonment at hard labor, imposed a fine of $ 250,000.00, and granted defendant's motion for appeal.[1]
Facts
Detective Kevin Treigle of the Kenner Police Department ("KPD") testified that, in 2016, he was assigned to work with the Drug Enforcement Agency, pursuant to the federal High Intensity Drug Trafficking Area ("HIDTA") program, on a task force investigating narcotics trafficking in Texas and Louisiana. Based on information obtained from a confidential informant that was corroborated through further surveillance, the task force determined that it was highly probable that Mark Priest and two other individuals were transporting a large quantity of methamphetamine through Jefferson Parish on June 27 and/or June 28, 2016.
On the evening of June 27, 2016, Detective Treigle observed Mark Priest and two men, later identified as Gabriel De La Cruz and David Deleon, meet a man known only as "Richard"[2] at the Laketown Bar and Grill in Kenner. Detective Treigle witnessed De La Cruz speaking to the unknown man as Priest and Deleon stood nearby. Priest, Deleon, and De La Cruz left in a vehicle together.[3]
Later that night, the task force observed Priest leaving a hotel near the Treasure Chest Casino and entering the casino with Deleon. By that time, officers had learned that there was an outstanding arrest warrant for Priest out of Harris County, Texas. Detective Treigle, working with Detective Keenan Jackson of the KPD located Priest, escorted Priest and Deleon to the casino's security office, and arrested Priest *998 (hereinafter "defendant") on the outstanding warrant.
Pursuant to a search incident to defendant's lawful arrest,[4] the officers seized three black, cylindrical objects, wrapped in electrical tape, from the front waistband of defendant's underpants and a small plastic bag from defendant's sock. Defendant was advised of his rights and elected not to speak to officers at that time.
After defendant's arrest, Detective Jackson took custody of the black 'cylinders' and the plastic bag. Upon removing the electrical tape from each cylinder, the officers discovered a cellophane wrapper containing almost six hundred grams of crystalline material. Further, the plastic bag recovered from defendant's sock contained about four grams of crystalline material. The crystalline substance found in each package field-tested positive for methamphetamine.
At trial, Detective Jackson identified his handwriting on the seal of the evidence bag containing the methamphetamine recovered from defendant's person and the seal of the evidence bag containing the cellophane packaging and black electrical tape from each cylinder. Further, he identified his signature on the seal of the evidence bag containing the small plastic bag recovered from defendant's sock. Detective Jackson testified that, after he logged the evidence, he placed it in an evidence safe until he transferred it to the evidence custodian.
Michael Cole, a forensic chemist for the Jefferson Parish Sheriff's Office ("JPSO") Crime Lab who was accepted as an expert in forensic analysis of controlled dangerous substances, testified that he analyzed the crystalline substance seized from defendant and concluded that it contained methamphetamine. Mr. Cole further testified that the crystalline substance found in the three cylindrical objects seized from defendant's underpants had a total net weight of approximately five hundred eight-two grams, and that the methamphetamine found in defendant's sock had a total gross weight of approximately three grams.[5]
At trial, after waiving his Fifth Amendment right to remain silent, defendant testified that he met De La Cruz through a friend while he was living in Texas.[6] According to defendant, De La Cruz, when they first met, threatened defendant with a gun. Defendant testified that, on June 26, 2016, defendant agreed, under duress, to accompany De La Cruz from Texas to New Orleans to show him around the city. During the ride from Texas to New Orleans, defendant claimed he told De La Cruz that he did not want to be part of any drug deal. Once in Louisiana, the men traveled to Slidell where they met up with Deleon.
According to defendant, the next day, the trio met a fourth man, named Richard, at a bar and grill. Defendant then left with Deleon in a truck driven by De La Cruz, who pulled over into a parking lot and gave defendant two packages wrapped in electrical tape, which he placed in his pants, and a third package which he placed in his sock. Defendant testified that he was nervous and told the men he did not want anything "to do with this," but did as he was instructed.
*999 Defendant recalled that, later that evening, he and Deleon went into the bar at the Treasure Chest Casino. Defendant noted that Deleon was on his phone the entire time they were in the casino. Defendant testified that he "knew there was something odd" so he dialed 9-1-1 and then hung up. He further stated that he "knew the cops were following" them because the same taxicab that he observed at the bar and grill, later stopped for Deleon and him at a Wendy's restaurant. Defendant testified that, after his arrest, he discovered evidence that Deleon was working for law enforcement.
Discussion
When the issues on appeal relate to both the sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the evidence. State v. Hearold , 603 So.2d 731, 734 (La. 1992). If the reviewing court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary. Id. Alternatively, when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the defendant is not entitled to an acquittal, and the reviewing court must consider the assignments of trial error to determine whether the accused is entitled to a new trial. Id. ; See also State v. Nguyen , 05-569 (La. App. 5 Cir. 2/3/06), 924 So.2d 258, 262.
Thus, we will address the sufficiency of the evidence, which defendant raises in his second assignment of error before his other assignments. Specifically, defendant argues that the evidence is insufficient to support his conviction because the State failed to establish the chain of custody regarding the methamphetamine allegedly recovered from his person. He maintains the documents from the JPSO Crime Lab show the evidence was received from "C. Ellis," but the KPD chain of custody log does not show the evidence was signed out by "C. Ellis."
The State responds that it established identification of the narcotics and related evidence in this case in a manner sufficient to prove beyond a reasonable doubt that defendant possessed the contraband that was seized from his person, tested, and introduced at trial as evidence against him.
The standard of review for determining the sufficiency of the evidence is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under the Jackson standard, a review of a criminal conviction record for sufficiency of evidence does not require the court to ask whether it believes that the evidence at trial established guilt beyond a reasonable doubt but rather whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt after viewing the evidence in the light most favorable to the prosecution. State v. Flores , 10-651 (La. App. 5 Cir. 5/24/11), 66 So.3d 1118, 1122.
Defendant was convicted of possession of over four hundred grams of methamphetamine, in violation of La. R.S. 40:967(F). On appeal, defendant argues there is no evidence to prove beyond a reasonable doubt who had custody of the narcotics seized from his person on June 28, 2016, until the time the narcotics were delivered to the JPSO Crime Lab on August 16, 2016. He notes that the last entry on the KPD chain of custody log is dated August 12, 2016, and that the evidence was not received by the JPSO Crime Lab until August 16, 2016.
*1000 Defendant further submits that the JPSO Crime Lab log indicates the evidence was received from "C. Ellis" of the KPD; however, the KPD log does not indicate that the evidence was signed out by "C. Ellis." Additionally, defendant maintains that according to Detective Jackson, the weight of the cylindrical objects seized from defendant's mid-section weighed five hundred ninety-seven and ½ grams and that the weight of the bag seized from defendant's sock was four grams; however, according to defendant, Mr. Cole testified that the cylindrical objects he tested weighed five hundred eighty-two grams and three grams respectively. Accordingly, the combination of the whereabouts of the evidence from August 12, 2016 and August 16, 2016, the omission of the signing out of the evidence by "C. Ellis," and the alleged discrepancy in the weight of the evidence, leads defendant to conclude that reasonable doubt exists as to whether the evidence seized from defendant was the same evidence tested by Mr. Cole.
First, we find that defendant waived any chain of custody argument with regard to the methamphetamine found in his sock as it was admitted into evidence without objection by defendant at trial. Under La. C.Cr.P. art. 841, a contemporaneous objection is required to preserve an error for appellate review. The purpose of the contemporaneous objection rule is to allow the trial judge the opportunity to rule on the objection and thereby prevent or cure an error. State v. Herrod , 412 So.2d 564, 566 (La. 1982) ; State v. Parks , 07-655 (La. App. 5 Cir. 1/22/08), 977 So.2d 1015, 1027, writ denied , 08-0495 (La. 12/19/08), 996 So.2d 1126. The failure to object to the introduction of evidence at the time it is offered operates as a waiver of any complaint on appeal. La. C.Cr.P. art. 841 ; State v. Kinchen , 342 So.2d 174 (La. 1977).
Additionally, defendant has waived any argument regarding chain of custody with respect to the alleged weight discrepancy between the cylindrical objects containing methamphetamine. The only objection lodged by defendant at trial as to chain of custody was Detective Jackson's alleged failure to contemporaneously identify the three cylinders when they were seized at the scene. The failure to object to the introduction of evidence at the time it is offered operates as a waiver of any complaint on appeal. La. C.Cr.P. art. 841 ; State v. Kinchen, supra.
Thus, defendant's only remaining argument regarding sufficiency is that the State failed to establish the chain of custody with respect to the methamphetamine in the three cylinders seized from defendant due to a purported gap in the custody logs between KPD and the JPSO Crime Lab. As previously noted, when issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana , 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accordance with Jackson in the light most favorable to the prosecution, could not reasonably conclude that all of the essential elements of the offense have been proved beyond a reasonable doubt.[7]
When the entirety of the evidence, including inadmissible evidence which was erroneously admitted, is insufficient to *1001 support the conviction, the accused must be discharged as to that crime, and any discussion by the court of the trial error issues as to that crime would be pure dicta since those issues are moot. Hearold, supra . On the other hand, when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must then consider the assignments of trial error to determine whether the accused is entitled to a new trial. Hearold, supra .
If the reviewing court determines there has been trial error (which was not harmless) in cases in which the entirety of the evidence was sufficient to support the conviction, then the accused must receive a new trial, but is not entitled to an acquittal even though the admissible evidence, considered alone, was insufficient. Lockhart v. Nelson , 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988). Thus, we must determine whether the entirety of the evidence, both admissible and inadmissible, was sufficient to support defendant's conviction for possession of methamphetamine over four hundred grams.
Here, the evidence established that defendant was arrested in Jefferson Parish pursuant to an outstanding warrant for his arrest from Texas. Pursuant to defendant's arrest, law enforcement officers seized almost six hundred grams of methamphetamine from defendant's person. Thus, we find that the evidence presented was sufficient to support his conviction under the Jackson standard.
However, in accordance with Hearold, supra , the focus of the inquiry now shifts to defendant's allegation that the methamphetamine was improperly admitted at trial due to a lack of proper chain of custody, and if improperly admitted, the consequences, if any, such admission may have on defendant's conviction.
Before it can be admitted at trial, demonstrative evidence must be properly identified. La. C.E. art. 901. This identification may be visual (i.e., by testimony at the trial that the object exhibited is the one related to the case) or it may be by chain of custody (i.e., by establishing the custody of the object from the time it was seized to the time it was offered in evidence). State v. Cosey , 97-2020 (La. 11/28/00), 779 So.2d 675, 678, cert. denied , 533 U.S. 907, 121 S.Ct. 2252, 150 L.Ed.2d 239 (2001) ; State v. Sweeney , 443 So.2d 522, 528 (La. 1983) ; State v. Brooks , 01-864 (La. App. 5 Cir. 1/29/02), 807 So.2d 1090, 1099.
Evidence as to custody does not have to eliminate all possibility that the object has been altered; rather, for admission, it suffices that it is more probable than not that the object is the one connected to the case. Sweeney, supra ; State v. Addison , 03-1421 (La. App. 5 Cir. 3/30/04), 871 So.2d 536, 551, writ denied , 04-1291 (La. 10/29/04), 885 So.2d 584. A defect in the chain of custody goes to the weight of the evidence rather than its admissibility. State v. Ferguson , 09-1422 (La. App. 4 Cir. 12/15/10), 54 So.3d 152, 170, writ denied , 11-0135 (La. 6/3/11), 63 So.3d 1008. A trial court is vested with great discretion in determining whether a party has laid a proper foundation for the introduction of evidence. Id.
Here, at trial, the State established that Detective Treigle in Detective Jackson's presence searched defendant and seized three cylindrical objects from defendant's person. Upon seizing the objects, Detective Treigle handed them to Detective Jackson. The packaging (the black electrical tape and cellophane wrapping) containing the narcotics seized on the scene was identified by Detectives Treigle and Jackson as State's Exhibit 1, and the methamphetamine *1002 contained in the packaging was identified by the officers as State's Exhibit 2. Specifically, Detective Jackson testified that his handwriting was contained on the evidence bags for State's Exhibits 1 and 2, referencing item number F-8.591-16 dated June 28, 2016, which is the day that the evidence in question was seized.
On cross-examination, Detective Jackson admitted that, in his report, he did not specifically list the evidence seized as "Evidence Article 1 [and] 2." Thus, defendant objected to the admission of State's Exhibits 1 and 2 on the basis of a lack of chain of custody due to the fact that they were not identified contemporaneously as Evidence Articles 1 and 2 by Detective Jackson when they were seized. The trial court denied defendant's objection to the admission of these pieces of evidence finding that Detective Jackson identified the items seized from defendant on the night of his arrest and his handwriting on those items.
In this case, any alleged gap in the chain of custody was placed before the trier of fact-the judge in this case-who determined that sufficient visual identification was made through the testimony of Detective Treigle, Detective Jackson, and Mr. Cole to verify that the evidence at issue, which tested positive for methamphetamine in a quantity over four hundred grams, was that evidence discovered on defendant's person subsequent to his arrest.
Further, any alleged defect in the chain of custody goes to the weight of the evidence rather than its admissibility, and after considering the testimony presented, we find the trial court did not abuse its discretion in admitting the evidence and finding the evidence to be connected to the case. State v. Arita , 04-39 (La. App. 5 Cir. 3/1/05), 900 So.2d 37, writ denied , 05-0843 (La. 11/29/05), 916 So.2d 165 (a gap in the chain of custody concerning the transportation of the latent print to the crime lab was insufficient to rebut a finding that the print was connected to the case). Considering the record in its entirety, we find that the evidence presented at trial was sufficient to prove beyond a reasonable doubt that defendant possessed more than four hundred grams of methamphetamine.
In his second assignment of error, defendant argues that the trial court erred in denying his motion to continue in order to secure the presence of out of state witnesses. Specifically, defendant argues that the trial court erred in denying his verbal motion to continue his trial in order to secure the presence of out-of-state witnesses-De La Cruz and Deleon. He claims that the witnesses were necessary to present his defense of entrapment since he contends that Deleon and De La Cruz were working with police. Defendant explains that, although service was made on De La Cruz, the status of the subpoena on Deleon was unknown. Defendant asserts that his motion to continue the trial should have been granted and that, by forcing him to proceed, the trial judge denied his right to compulsory process.
The State argues the record reflects the trial judge was fully justified and acted within his discretion in denying defendant's untimely oral motion for a continuance on the day of trial after multiple continuances had been granted for defendant to attempt to secure the presence of out-of-state witnesses. The State maintains the record does not support the proposition that the grounds for defendant's continuance arose unexpectedly, and thus, having failed to comply with the requirements of La. C.Cr.P. art. 707, it maintains defendant has not preserved his argument. The State also suggests that defendant did not adequately comply with the requirements of La. C.Cr.P. art. 709, contending that he failed to establish that the witnesses *1003 would testify to material facts needed for his defense or that the witnesses would be available at a later date. Finally, the State concludes that even assuming arguendo that the oral motion for a continuance was erroneously denied, defendant is not entitled to relief because he has failed to make a showing of specific prejudice.
Defendant was arraigned on August 29, 2016. Approximately a year and a half later, on February 19, 2018, defendant filed a motion to obtain out-of-state witnesses, David Deleon and Gabriel De La Cruz, which the trial court granted. Further, the trial court ordered that out-of-state subpoenas issue to request the Harris County and Fort Bend County courts in Texas serve De La Cruz and Deleon. The trial court further granted defendant's motion to continue trial to allow additional time to obtain service and to secure the appearance of the two alleged material witnesses at trial.
On March 21, 2018, defendant filed a second motion to obtain witnesses from another state, again contending Deleon and De La Cruz were material to his entrapment defense. The trial court again granted defendant's motion and, for a second time, ordered that certificates be issued to the court of record in the county in which the witnesses were located, to secure the presence of Deleon and De La Cruz at the trial scheduled for May 14, 2018.
On the morning of May 14, 2018, defense counsel reminded the court that it had ordered the out-of-state certificates to secure the presence of Deleon and De La Cruz. Defense counsel confirmed that De La Cruz was incarcerated in Richmond County, Texas, and had a court date on the same day of defendant's trial. Further, defense counsel confirmed that the subpoena for Deleon had been issued, but service regarding the subpoena was unknown. Defense counsel verbally sought another continuance, which the trial court denied.
Both the Sixth Amendment of the United States Constitution and Article I, Section 16 of the Louisiana Constitution (1974) guarantee a criminal defendant the right to compulsory process and to present a defense. A defendant's right to compulsory process is the right to demand subpoenas for witnesses and the right to have those subpoenas served. State v. Gordon , 01-734 (La. App. 5 Cir. 11/27/01), 803 So.2d 131, 148, writ denied , 02-0362 (La. 12/19/02), 833 So.2d 336. La. C.Cr.P. art. 741 provides for obtaining a witness from another state and requires the trial judge to issue a certificate under the seal of court stating that a person in another state is a material witness in a prosecution pending in a court of record in this state and specifying the number of days the witness shall be required. This certificate shall be presented to a judge of a court of record in the county (parish) in which the witness is found. See La. C.Cr.P. art. 741. Defendant is entitled to have the procedures set forth in this article completed. However, this right is predicated on the exercise of due diligence by the accused. See State v. Hogan , 372 So.2d 1211, 1214 (La. 1979).
A motion for a continuance must be made in writing and allege the specific grounds upon which it is based. La. C.Cr.P. art. 707. As a general rule, a motion for a continuance must be made within seven days prior to trial. Nevertheless, in the interests of justice, the trial court may grant a continuance upon written motion at any time after a contradictory hearing. Id.
The denial of an oral motion for continuance leaves nothing for the appellate court to review.
*1004 State v. Winfrey , 97-427 (La. App. 5 Cir. 10/28/97), 703 So.2d 63, 68, writ denied , 98-264 (La. 6/19/98), 719 So.2d 481 (citing State v. Malinda , 95-292 (La. App. 5 Cir. 10/31/95), 663 So.2d 882, 886 ). Nevertheless, there is a jurisprudential exception to the requirement for a written motion where the circumstances producing the motion occur unexpectedly, and there is no opportunity to prepare the motion. State v. Bartley , 03-1382 (La. App. 5 Cir. 3/30/04), 871 So.2d 563, 567, writ denied , 04-1055 (La. 10/1/04), 883 So.2d 1006 (citing Winfrey , 703 So.2d at 68 ) (holding that the defendant had not preserved the denial of his oral motion for continuance because no unexpected circumstances arose to prevent the filing of the written motion).
In the present case, there is no evidence in the record that a written motion for continuance was filed or that an oral motion was made seven days in advance of trial. Rather, on the day of trial, defense counsel moved for a continuance on the basis that the two out-of-state witnesses were not present. That day, defense counsel informed the court that De La Cruz was incarcerated in Texas with his own court date that day. Further, defense counsel stated that Deleon had apparently not been served. We find that the circumstances of the witnesses' absence did not occur unexpectedly so as to prevent the filing of a written motion. Therefore, defendant has not preserved for appellate review the denial of his verbal motion to continue. This assignment lacks merit.
In his final assignment of error, defendant argues, as he did at sentencing, that the maximum thirty-year sentence imposed upon him is excessive. He contends that the trial judge imposed the maximum sentence of thirty years to punish defendant for declining to enter a guilty plea and exercising his right to trial. The State submits that, after considering the amount of methamphetamine possessed, the harm such drugs pose to society, and defendant's criminal background, the trial judge did not abuse his broad sentencing discretion in imposing the maximum sentence in this case.
Here, defendant was convicted of possession of over four hundred grams of methamphetamine, in violation of La. R.S. 40:967. At the time of the instant offense in June of 2016, a defendant convicted of violating La. R.S. 40:967 was subject to a penalty range of fifteen to thirty years at hard labor and a fine of not less than two hundred fifty thousand dollars nor more than six hundred thousand dollars. See La. R.S. 40:967(F)(2)(c). The sentencing statute further mandated that the entirety of the sentence not be suspended and that the defendant not be eligible for probation or parole prior to serving the minimum sentence, which is at least fifteen years. See La. R.S. 40:967(G). In this case, the trial judge sentenced defendant to the maximum thirty-year term of imprisonment at hard labor.
Before sentencing the forty-nine-year-old defendant, the trial court took cognizance of his prior convictions, which included two convictions for burglary of a habitation (1988 and 2002), burglary of a motor vehicle (1990), robbery (1993), and unauthorized use of a motor vehicle (2002). Further, the trial judge noted that defendant was on parole for his 2002 burglary of a habitation conviction at the time he committed the instant offense. In imposing the thirty-year sentence, the court also noted the "massive amount" of methamphetamine (five hundred eighty-two grams) defendant had in his possession, which was transported from Texas to Louisiana, finding defendant to be in need "of a very lengthy correctional sentence." The trial court further noted that defendant might be facing a potential parole revocation and *1005 a possible life sentence as a multiple offender.
The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. Article I, § 20 of the Louisiana Constitution also prohibits cruel and unusual punishment but further explicitly prohibits excessive punishment. A sentence is unconstitutionally excessive "if it makes no measurable contribution to acceptable goals of punishment and is nothing more than the purposeless imposition of pain and suffering and is grossly out of proportion to the severity of the crime." State v. Davis , 449 So.2d 452, 453 (La. 1984). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Lawson , 04-334 (La. App. 5 Cir. 9/28/04), 885 So.2d 618, 622, writ denied , 05-244 (La. 12/9/05), 916 So.2d 1048.
A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. The issue on appeal is whether the trial court abused its discretion not whether another sentence might have been more appropriate. State v. Dorsey , 07-67 (La. App. 5 Cir. 5/29/07), 960 So.2d 1127, 1130.
However, while a trial judge is given wide discretion in the imposition of sentences within statutory sentencing ranges, a sentencing judge does not possess unbridled discretion to impose a sentence within statutory limits. State v. Sepulvado , 367 So.2d 762, 769-70 (La. 1979). "In providing a wide range of criminal sanctions for violations of a statute, the legislature obviously intends that the judge shall exercise his sentencing discretion to impose sentences gradated according to the individualized circumstances of the offense and of the offender." Id. at 766. The "interactivity between the range of permissible statutory criminal sanctions and the individualized facts of each case creates a sliding, fact-variant spectrum for a trial judge's discretion under each criminal statute for each particular criminal defendant." State v. Hamdalla , 12-1413 (La. App. 4 Cir. 10/2/13), 126 So.3d 619, 627, writ denied , 13-2587 (La. 4/25/14), 138 So.3d 642.
The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. Pearson , 07-332 (La. App. 5 Cir. 12/27/07), 975 So.2d 646, 656. In reviewing a trial court's sentencing discretion, three factors are considered: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. Id. Generally, maximum sentences are reserved for cases involving the most serious violations of the offense charged and the worst type of offender. State v. Badeaux , 01-406 (La. App. 5 Cir. 9/25/01), 798 So.2d 234, 239, writ denied , 01-2965 (La. 10/14/02), 827 So.2d 414.
In this case, after applying the three factors, we find that the thirty-year maximum sentence imposed by the trial court was unconstitutionally excessive in this case. Here, although defendant was found in possession of a large quantity of methamphetamine, defendant testified that, at the time of the incident, he was homeless and felt threatened and intimidated by De La Cruz and Deleon. Further, although defendant was still on parole for one of his four prior convictions at the time of the instant offense, his prior convictions are not drug offenses, and only one (the 1993 robbery) appears to be a crime of violence. There is nothing in the record, or in defendant's criminal past, to indicate *1006 that he is a drug dealer or part of a drug distribution ring.
Furthermore, we note that, if defendant had committed the instant offense approximately one year later, he would have been subject to a maximum sentence of only twenty years. In Acts 2017, No. 281, effective August 1, 2017, the Legislature amended the sentencing range for possession of over four hundred grams of methamphetamine by reducing it to a range of one to twenty years. At the same time, the Legislature also repealed Section (G) of La. R.S. 40:967regarding the imposition of the restriction of benefits for the instant crime of conviction. While the amendments to La. R.S. 40:967 were not given retroactive effect, that does not mean this Court cannot consider the expression of legislative will at the time the amendment reducing the applicable penalties was passed. See State v. Dixon , 17-422 (La. App. 5 Cir. 3/14/18), 241 So.3d 514, 527 (dissent) (citing State v. Jarreau , 05-355 (La. App. 4 Cir. 12/14/05), 921 So.2d 155, 162-63, writ denied , 06-131 (La. 6/14/06), 929 So.2d 1267 ).
Based on the foregoing, we find that the maximum sentence, which should be reserved for cases involving the most serious violations of the offense charged and the worst type of offender, was not properly imposed in this case. Accordingly, we find that defendant's thirty-year sentence is disproportionate to the harm done and shocks one's sense of justice. Finding the sentence imposed unconstitutionally excessive, we vacate defendant's sentence and remand for resentencing.
Pursuant to La. C.Cr.P. art. 881.4(A), this Court may provide direction regarding a constitutionally reasonable sentence in a given case. Accordingly, in this case, we suggest a sentence of twenty years for this conviction of possession of more than four hundred grams of methamphetamine.
Errors Patent
Finally, we have reviewed the record for errors patent, according to La. C.Cr.P. art. 920 ; State v. Oliveaux , 312 So.2d 337 (La. 1975) ; and State v. Weiland , 556 So.2d 175 (La. App. 5th Cir. 1990). We note that the record fails to reflect that defendant was properly advised of the time period for seeking post-conviction relief as required by La. C.Cr.P. art. 930.8, after imposition of his sentence on May 24, 2018. Accordingly, through this opinion, we inform defendant that La. C.Cr.P. art. 930.8 provides that a defendant shall have two years after the judgment of conviction and sentence has become final to seek post-conviction relief. See State v. Perez , 17-119 (La. App. 5 Cir. 8/30/17), 227 So.3d 864.
CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING.

Although defendant's May 21, 2018 motion for appeal-filed after the verdict but before sentencing-was premature, defendant's appeal is not premature since his motion for appeal was not granted until after he was sentenced. See State v. Proctor , 04-1114 (La. App. 5 Cir. 3/29/05), 901 So.2d 477, 484 n.4.

"Richard" was not identified in the record at hand.

Later that night, the officers stopped this vehicle, driven by De La Cruz, and, with his consent, searched the vehicle. During the search, the officers found remnants of black electrical tape.

Deleon and De La Cruz were arrested for attempted conspiracy to distribute methamphetamine but they were not tried with defendant-herein and are not the subject of this appeal.

Mr. Cole testified that the net weight is the weight of the substance only, while the gross weight is the weight of the substance and its packaging.

Defendant testified that he had several prior felony convictions.

Alternatively, the accused could be entitled to a reduction of the conviction to a judgment of guilty of a lesser and included offense. La. C.Cr.P. art. 821 ; State v. Byrd , 385 So.2d 248 (La. 1980).